JUDGE DANIELS

Abraham Mykoff, *Pro Se*
*401 North Fifth Avenue*
*Edison, New Jersey  08817*
*848-202-2122*
*E-mail: abrahammykoff@protonmail.com*

## UNITED STATES DISTRICT COURT

## in and for the SOUTHERN DISTRICT OF NEW YORK

Abraham Mykoff, individually
Ron Greenberg, individually

CASE NO.: **17 CV 8466**

          Plaintiffs,

COMPLAINT

      vs.

DEMAND FOR JURY TRIAL

HOME DEPOT, INC.; COURI, aka
Cuori International (H.K.) Ltd., aka
Cuori Group,  aka Ningbo Prince Electric
Appliance Co. Ltd., aka Millan Stylee
Alan Kape, aka owner, Kape Insurance
Agency, Individually, and, in official capacity
Scott Fluger, Kape Insurance Agency,
Individually, and in official capacity
Philadelphia Insurance Companies, aka
Philadelphia Consolidated Holding Corp.
aka  Tokio Marine Holdings, Inc.;
Jim Cahill, Mayor, The City of New Brunswick
Individually and in official capacity Middlesex
Board of County Commissioners,  Robert
Rawls, Director, The City of New Brunswick
Fire Department, Individually and in official capacity,
Charles E. Tomaro, Freeholder Deputy Director,
Middlesex County's Board of Chosen Freeholders,
Individually and in Official Capacity
Christoper Paladino, DEVCO, Individually and in
official capacity, Mitch Karon, Executor Director,
New Brunswick Parking Authority, Individually and
in official capacity, Board of Commissioners New
Brunswick Parking Authority, Leonard T. Bier,
Board, Individually and in Official Capacity,

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

Leonard T. Bier, General legal counsel for New
Brunswick Parking Authority, Individually and in
Official Capacity. Bier Associates, Individually
and in Official Capacity, New Brunswick Parking
Authority Board Board of Commissioners,

DOES  1 to 100,

Defendants,

# GENERAL ALLEGATIONS

## I.  JURISDICTION AND VENUE

1. Plaintiffs Jurisdiction is based on federal diversity subject matter jurisdiction

   pursuant to 28 U.S.C. § 1332.

2. This court is exercising diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## II. PARTIES

3. Plainttiff ABRAHAM MYKOFF, Rabbi, Congregation Poile Zedek resides in Edison,

   New Jersey.

4. Plaintiff, Ron Greenberg, Trustee, Congregation Poile Zedek resides in East

   Brunswick, New Jersey.

5. Defendant HOME DEPOT, INC.; is a Delaware Corporation, Corporate Headquarters

   Atlanta, Gerogia 30339.

6. Defendant Cuori, Cuori International (H.K.) Ltd., aka Cuori Group,  aka Ningbo Prince
   Electric  Appliance Co. Ltd. (H.K.),  aka Millan Stylee USA, Inc.;

7. Ningbo Prince Electric Appliance Co., Ltd., Mr. Feng Cen, Manager, Xinpu Industry
   Zone, Cixi, Zhejiang 3150000, China

8. Defendant Alan Kape, aka owner, Kape Insurance  Agency, Individually, and, in his
   official capacity, 510 Hamilton Blvd., South Plaintifeld, New Jersey  07080. Kape

Insurance Agency is a New Jersey Corporation.

7. Defendant Scott Fluger, Kape Insurance Agency, Individually, and in his official capacity, 510 Hamilton Blvd., South Plaintifeld, New Jersey 07080. Is a New Jersey Corporation.

8. Defendant Philadelphia Insurance Companies, aka Philadelphia Consolidated Holding Corp. is a Delaware Corporation with Corporate Headquarters located at One Bala Plaza, Suite 100, Bala Cynwyd, Pa. 19004.

9. Defendant Tokio Marine Holdings, Inc.; with USA Corporate Headquarters located at 13403 Northwest Freeway, Houston, Texas 77040. Tsuyoshi Nagano, Chairman of Board – Tokio Marine Holdings, Inc. and Nichido Fire Insurance Company, Ltd., Japan.

11. **"CUORI"** shall refer to Cuori, Cuori International (H.K.) Ltd., aka Cuori Group, aka Ningbo Prince Electric Appliance Co. Ltd. (H.K.), aka Millan Stylee USA, Inc. collectively.

12. **"TOKIO"** shall refer to Philadelphia Insurance Companies, aka Philadelphia Consolidated Holding Corp. collectively.

13. Jim Cahill, Mayor, The City of New Brunswick, incorporated in New Jersey, Individually and in official capacity.

14. _____Middlesex Board of County Commissioners, incorporated in New New Jersey.

15. Robert Rawls, Director, The City of New Brunswick Fire Department, incorporated in New Jersey, Individually and in official capacity,

16. Charles E. Tomaro, Freeholder Deputy Director, Middlesex County's Board of Chosen Freeholders, incorporated in New Jersey, and Individually and Official Capacity.

17. Christoper Paladino, DEVCO, incorporated in New Jersey, Individually and in official capacity,

18. Mitch Karon, Executor Director, New Brunswick Parking Authority, Individually and in official capacity,

19. Board of Commissioners, New Brunswick Parking Authority, incorporated in New Jersey. Leonard T. Bier, Board Member, Individually and in Official Capacity.

20. Leonard T. Bier, General legal counsel for New Brunswick Parking Authority, Individually and in Official Capacity.

21. Bier Associates and Leonard T. Bier, Individually and in Official Capacity.

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

22. Jim Cahill, Mayor, the City of New Brunswick, incorporated in New Jersey, individually and in official capacity

23. Robert Rawls, Director, the City of New Brunswick Fire Department,

incorporated in New Jersey, individually and in official capacity.

24. Charles E. Tomaro, Freeholder Deputy Director, individually and in Official

Capacity Middlesex County's Board of Chosen Freeholders, incorporated in

New Jersey.


## III. STATEMENT OF FACTS

### A.    CUORI'S  defective heaters:

21. Sometime prior to plaintiff's, Abraham Mykoff,   purchase on 10-22-17 Ningbo Prince

Electric Appliance Co. Ltd., established in 2007, manufactured and/or caused the

manufacture, for sale to the general public [ as a major and globally famous Chinese

manufacturer and exporter of oil radiators especially in the industry of electric

appliances.   The subject Petroleum oil [ "enviromental protection oil " ]filled electric

radiator space heaters that were defective for fire hazard.  **Ningbo Prince Electric**

**Appliance Co**. exported to **Millan Stylee USA Inc**. through the port of Long Beach,

California.


22. As Consignee on behalf of Ningbo Prince  Electric  Appliance  Co. Ltd. Cuori, aka Cuori

International (H.K.) Ltd., aka Cuori Group were distributors for the subject heaters of

identical, near identical and similar designs throughout the United States.   HOME

DEPOT, INC. specifically store  number  #918, Milltown, New Jersey  08850 with an

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

itemized Protection Plan sold  to Rabbi Abraham Mykoff the electric Petroleum oil filled radiator heaters purchased on 22nd October 2015 further placing the defective heaters into the stream of commerce.  On Friday, 23rd October 2015, aforementioned heaters failed by      igniting their own   volatile  vapors  during  initial  operation,  [  thusly, operating in this failure mode by  functioning  as  an  electrically  operating  pressure cooker fire bomb, ]

22. The U.S. Consumer Products Safety Commission, hereinafter, CPSC, has established guidelines for manufacturers and sellers to recall defective and dangerous products. Defective products are broken into three categories:

I.  **Class A Hazards:**  These exist when a risk of death or grievous injury or illoness is likely or very likely, or serious injury or illness is very likely.  Class A hazards warrant the  highest  level  f  attention.    They  call  for  a  company  to  take  immediate, comprehensive,  and  expansive  corrective  action  measures  to  identify  and  notify consumers retailers and distributors having the defective product and to remedy the defect through repair or replacement of the product, refunds, or other measures.

II.  **Class B Hazards:**  These exist when a risk of death or grievous injury or illness is not likely to occur, but is possible, or when serious injury or illness is likely, or moderate injury or illness is very likely.

III. **Class C Hazards:**  These exist when a  risk of death or grievous injury or illness is not likely, but is possible, or when moderate injury or illness is not necessarily likely, but is possible.  (CPSC Recall Handbook,  ( Revised 2nd March 2012, p. 15-16 ).

23. The CPSC also states in its Recall Handbook, "[r]egardless of whether a product defect is classified as a Class A, B. or C priority hazard, the common element is that

each of these defects creates a substantial product hazard that requires corrective action to reduce that risk of injury," (CPSC Recall Handbook, p. 16 ).

24. Additionally, the CPSC reads in part:

V. (A). Preparing For A Product Recall

It is unlikely that any two recall programs will ever be identical. Therefore, companies should be prepared to address issues that invariably arise. For instance:

**a. What is the defect that causes the product hazard?**

**b.What caused the product defect to occur in the first place?**

**c.Where are the unsafe products? How many are there?**

**d.Did the product fail to comply with government safety regulations? How?**

**e.Was the government or the appropriate regulatory body informed about the defect or lack of compliance?**

**f.Has the company discontinued production and shipments of these products to distributors?**

g.Has the company notified retailers to stop selling the product and asked them to help identify consumers who own the product?

h.Has the company started reviewing existing databases to identify potential

product owners, e.g., product registration and customer service records (CPSC

Recall Handbook, p. 17 ).

25. Additionally, the CPSC describes the objectives of a recall:

a.     To locate all defective products as quickly as possible;

b.     To remove defective products from the distribution chain and from the

possession of consumers; and

c.     To communicate accurate and understandable information in a timely manner

to the public about the product defect, the hazard, and the corrective action.

(CPSC Recall Handbook, p. 18 ).

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

## STATEMENT OF CLAIMS

## CLAIM 1:   GENERAL NEGLIGENCE

Plaintiffs' Abraham Mykoff and Ron Greenberg incorporate by reference the General Allegations set forth above as though set forth in full in this claim.

Defendants, and each of them, knew or should have known that the Cuori Petroleum oil filled electric radiator space heaters hereinafter, heaters, sold to Mr. Mykoff was defective and a danger to users of the heaters.

Defendants, and each of them, therefore had a duty of reasonable care to refrain from selling the defective heaters  and/or provide warnings  to the danger to potential purchasers and users of the heaters.

Despite that, defendants, and each of them, breached their duty of reasonable care and manufactured, distributed and/or sold the defective heaters, and did so without warning of the danger associated with the use of the Cuori heaters.

Additionally, once defendants became aware of recalls mandated by CPSC, defendants, and each of them, had a duty to make reasonable efforts to assure that all customers of heaters distributed in the United States were advised of said defects and/or destroyed in order to assure that no defective heaters remained in use. Defendants breached that duty of care by failing to act reasonably in recalling the defective heaters.

Furthermore, defendant HOME DEPOT, INC. knew or should have known of the danger associated with the use of Cuori's heaters containing re-used oil allegedly filled in China, and recalls from other manufactures of heaters, and should have taken reasonable action to withdraw any and all heaters from its retail sales and/or should have made

reasonable efforts to contact customers about the recall and communicate to customers about the recall and the dangers associated with these heaters.  Plainiff's are informed and believe and therein allege that despite its knowledge of dangers associated with these heaters and recalls, defendant HOME DEPOT, INC. made no efforts whatsoever to withdraw these heaters from retail sales or distribution and made no efforts to notify its customers about the recalls and dangers associated with these heaters.

As a proximate result of the negligence of defendants, and each of them, the structure of Congregation Poile Zedek was destroyed by the fire caused by the defects in the CUORI heaters.

As a further proximate result of the negligence of defendants, and each of them, Plaintiffs' allege that Rabbi Abraham Mykoff lost his income after thirty years of unending service at Congregation Poile Zedek, the Community lost use of this only Synagogue after ninety-two years in New Brunswick, New Jersey, its Members lost their Rabbi, use of  and Right to Worship in their Shul, traveling Orthodox Jews lost their use of and right to worship and they had done for ninety-two years, the Synagogue sustained economic and non-economic losses as irreparable harm and injury.

Punitive damages pursuant to New Jersey The New Jersey Products Liability Act ("NJPLA") and New Jersey statute, the Consumer Fraud Act ("CFA"),to be determined according to proof at the time of trial on the grounds that defendants' conduct in failing to take sufficient action to warn purchases, owners, and users of the defective heaters and/or to take sufficient action to effectively recall the defective heaters was despicable conduct which constituted malice and oppression as defined under New Jersey Civil Code

The New Jersey Products Liability Act ("NJPLA") and New Jersey statute, the Consumer Fraud Act ("CFA"),.  Plaintiffs' further alleged on information and belief that the actions upon

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

which Plaintiffs' claim for punitive damages is based were taken by the corporate defendants directly and/or the corporate defendants authorized or ratified the conduct of its direct or indirect employees, agents, distributors and/or that the actions were taken by an officer, director or managing agents of the corporations, and each of them.

## CLAIM II:  STRICT PRODUCT LIABILITY

Plaintiffs' Abraham Mykoff and Ron Greenberg incorporate by reference the General Allegations set forth above as though set forth in full in this claim.

The CUORI heaters sold to Abraham Mykoff for use by Congregation Poile Zedek was defective in manufacture and/or design and/or was defective because defendants, and each of them, failed to warn of the danger associated with the use of the heaters.

Defendants, and each of them, placed the defective CUORI heaters on the market that failed in Congreation Poile Zedek's structure by igniting their own volatile vapors during initial operation,   thusly operating in this failure mode by functioning as an electrically operating pressure cooker fire bomb, knowing they were to be used without inspection  for defects.

The defective CUORI heaters that destroyed Congregation Poile Zedek's structure were used in an intended or reasonably foreseeable manner, was in a defective condition when they left defendants possession and was the legal cause of Plaintiffs' injuries or damages.

As the proximate result of the defective product manufactured, distributed and/or sold by defendants, and each of them, Abraham Mykoff and the structure for Congregation Poile Zedek were substantially injured by the fire caused by the defects in the CUORI

heaters.

As a further proximate result of the defective product manufactured, distributed and/or sold by defendants, and each of them, Plaintiffs' incurred the following damages including, without limitation:

a.      Past and future economic loss and damages to be determined according to proof at the time of trial including, without limitation, economic damages for the loss of the services Abraham Mykoff provided to Congregation Poile Zedek as well as loss of business profits, income, and other economic damages:

b.      Punitive damages to be determined according to proof at the time of the trial pursuant to The New Jersey Products Liability Act ("NJPLA") and New Jersey statute, Consumer Fraud Act ("CFA"),on the grounds that defendants' conduct in failing to take sufficient action to warn purchasers, owners, and users of the defective CUORI heaters and/or to take sufficient action to effectively recall the defective CUORI heaters was despicable conduct which constituted malice and oppression as defined under New Jersey Civil Code Section New Jersey statute, the Consumer Fraud Act ("CFA"), Plaintiffs' further alleged on information and belief that the actions upon which Plaintiffs' claim for punitive damages is based were taken by the corporate defendants directly and/or the corporate defendants authorized or ratified the conduct of its employees  direct or indirect employees, agents, distributors and/or that the actions were taken by an officer, director or managing agents of the corporations, and each of them.

## CLAIM III.  GENERAL NEGLIGENCE

# ( PERSONAL INJURY, PROPERTY DAMAGE AND ECONOMIC LOSSES BY ABRAHAM MYKOFF, RON GREENBEG AS AGAINST ALL DEFENDANTS)

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

Plaintiffs' Abraham Mykoff and Ron Greenberg incorporate by reference the General Allegations set forth above as though set forth in full in this claim.

Defendants, and each of them, knew or should have known that the CUORI heaters sold to Abraham Mykoff were defective and created a danger to users of the heater.

Defendants, and each of them, therefore had a duty of care to refrain from selling the defective heater and/or to provide warnings as to the danger to potential purchases and users of the heaters.

Despite that, Defendants, and each of them, breached their duty of care and manufactured, distributed and/or sold the defective heater, and did so without warning of the danger associated with the use of the CUORI heaters.

Despite that, defendants, became aware of recalls mandated by CPSC, defendants, and each of them, had a duty of care to make reasonable efforts to assure that all of the defective CUORI heaters distributed in the United States were corrected for the defect, were reacquired by CUORI and/or were destroyed in order to assure that no defective heaters remained in use.  defendants' breached that duty of care by to act reasonably in recalling the the defective heaters.

Furthermore, defendant HOME DEPOT, INC. knew or should have known of the danger associated with the use of Cuori's heaters containing re-used oil allegedly filled in China, and recalls from other manufactures of heaters, and should have taken reasonable action to withdraw any and all heaters from its retail sales and/or should have made reasonable efforts to contact customers about the recall and communicate to customers about the recall and the dangers associated with these heaters.  Plaintiffs' are informed and believe and therein allege that despite its knowledge of dangers associated with these heaters and recalls, defendant HOME DEPOT, INC. made no efforts whatsoever to withdraw

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY