these heaters from retail sales or distribution and made no efforts to notify its customers about the recalls and dangers associated with these, CUORI, heaters.

As the proximate result of the negligence of defendants, and each of them, Plaintiffs' were injured by the fire caused by the defect in the CURORI heaters and, in additional, the fire destroyed both real and personal property owned by plaintiffs, employees and Members/Trustee's of the Congregation.

As a proximate result of the negligence of defendants, and each of them, plaintiffs alleges that they, employees, Members of the Congregation have incurred the following damages including, without limitation:

    a. Past and future economic loss and damages to be determined according to proof at the time of trial including, without limitation, economic damages for the loss and damage to real and personal property, loss of business profits, loss of business opportunities, cost of demolition, cost to re-build another similar structure and other economic losses;

    b. Past and future pain, suffering, anxiety, grief and other recoverable emotional distress to be determined according to proof at the time of trial;

    c. Punitive damages pursuant to New Jersey Civil Code Section Consumer Fraud Act ("CFA") to be determined according to proof at the time of trial, on the ground that defendants' actions in failing to take sufficient action to warn purchasers, owners and users of the defective COURI heaters and/or take sufficient action to effectively recall the defective CUORI heaters and/or to take sufficient action to effectively recall the defective CUORI heaters was despicable conduct which constituted malice and oppression as defined under New Jersey Civil Code Section The New Jersey Products Liability Act ("NJPLA") and New Jersey statute, Consumer Fraud Act ("CFA"). Plaintiff further alleges on information and

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

belief that the actions upon which Plaintiffs' claims for punitive damages is based were taken by the corporate defendants directly and/or the corporate defendants authorized or ratified the conduct of tis employees and/or that the actions were taken by an officer, director or managing agent of the corporations, and each of them.

## CLAIM IV:   STRICT PRODUCT LIABILITY
## (PERSONAL INJURY, PROPERTY DAMAGE AND ECONOMIC LOSSES BY Plaintiffs' ABRAHAM MYKOFF, RON GREENBERG)

Plainitiff's Abraham Mykoff and Ron Greenberg incorporate by reference the General Allegations set forth above as though set forth in full in this claim.

The CUORI heater sold to Abraham Mykoff was defective in manufacture and/or design and/or was defective because defendants, and each of them, failed to warn of the danger associated with the use of the heater.

Defendants, and each of them, placed the defective CUORI heater that caused the fire on the market, knowing it was to be used without inspection for defects.

The defective COURI heater that caused the fire was used in an intended or reasonably forseable manner, was in a defective condition when it left defendants' possession and was the legal cause of Plaintiffs' injury or damages.

As a further proximate result of the defective product manufactured, distributed and/or sold by defendants, and each of them, Plaintiffs' have incurred the following damages including, without limitation:

    a.    Past and future economic loss and damages to be determined according to proof at the time of trial including, without limitation, economic damages for the loss and damage to real and personal property, loss of business profits, loss of business

opportunities, medical expenses and other economic losses;

        b.    Past and future pain, suffering, anxiety, grief and other other recoverable emotional distress in an amount to be determined according to proof at the time of trial;

        c.    Punitive damages pursuant to New Jersey Civil Code Section The New Jersey Products Liability Act ("NJPLA") and New Jersey statute, Consumer Fraud Act ("CFA") on the grounds that defendants' conduct in failing to take sufficient action warn purchasers, owners and users of the defective CUORI heaters and/or to take sufficient action to effectively recall the defective CUORI heaters was despicable conduct which constituted malice and oppression as defined under NEW JERSEY CIVIL CODE Section New Jersey The New Jersey Products Liability Act ("NJPLA") and New Jersey statute, the . Plaintiff further alleges on information and belief that the actions upon which Plaintiffs' claim for punitive damages is based were taken by the corporate defendants directly and/or the corporate defendants authorized or ratified the conduct of tis employees and/or that the actions were taken by an officer, director or managing agent of the corporations, and each of them.

## CLAIM V: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## ( Plaintiffs' Abraham Mykoff, Ron Greenberg as AGAINST ALL defendants' )

Plaintiff Abraham Mykoff and Ron Greenberg incorporate by reference the General Allegations set forth above as though set forth in full in this claim.

Defendants, and each of them, knew or should have known that the CUORI heaters sold to Mr. Mykoff were defective and created a danger to users of the heaters.

Defendants, and each of them, therefore had a duty of care to refrain from selling the defective heater and/or to provide warnings as to the danger to potential purchasers and users of the heaters.

Despite that, defendants, and each of then, breached their duty of care an manufactured, distributed and/or sold the defective heater, and did so without warning of the danger associated with the use of CUORI heaters.

Additionally, once defendants became aware and, in their control of recalls mandated by CPSC, defendants, and each of them, defendants had a duty to make reasonable efforts to assure that all defective CUORI heaters distributed in the United States were corrected for the defect, were reacquired by CUORI and/or were destroyed in order to assure that no defective heaters remained in use. Defendants breached that duty of care by failing to act reasonably in recalling the defective heaters.

Furthermore, defendant HOME DEPOT, INC. knew or should have known of the danger associated with the use of the CUORI heaters, and recalls, and should have taken reasonable action to withdraw any and all CUORI heaters from its retail sales and/or should have made reasonable efforts to contact customers about the recall and communicate to customers about the recall and the dangers associated with CUORI heaters and recalls, defendant HOME DEPOT, INC. made no efforts whatsoever to withdraw the CUORI heaters from retail sales or distribution and made no efforts to notify its customers about recalls and the dangers associated with the CUORI heaters.

Not only was Sergey Belenkin in the "zone of danger" when the Beamer/Podium area was ignited by the fire caused by defendants' negligence, it was reasonably forseeable to defendants, and each of them, that he would be present and would personally witness destruction to the Structure of Congregation Poile Zedek as the result of the fire caused by

defendants' negligence and would suffer emotional distress as a result. Abraham Mykoff personally observed destruction to the Structure of Congregation Poile Zedek as the result of the fire caused by defendants' negligence and would suffer emotional distress as a result.

As a further proximate result of the negligence of defendants, and each of them, Plaintiffs' have incurred the following damages including, without limitation:

    a.    Past and future pain, suffering, anxiety, grief and other recoverable emotional distress from personally witnessing the injuries inflicted on his domestic and business partner according to proof at the time of trial;

    b.    Punitive damages pursuant to New Jersey Civil Code Section The New Jersey Products Liability Act ("NJPLA") and New Jersey statute, Consumer Fraud Act ("CFA") according to proof at the time of trial on the grounds that defendants' conduct in failing to take sufficient action to warn purchasers, owners and users of the defective CUORI heaters and/or to take sufficient action to effectively recall the defective CUORI heaters was despicable conduct which constituted malice and oppression as defined in New Jersey Civil Code. Plainitffs further alleges on information and belief that the actions upon which Plaintiffs' claim for punitive damages is based were taken by the corporate defendants directly and/or the corporate defendants authorized or ratified the conduct of its employees and/or that the actions were taken by an officer, director or managing agent of the corporations and each of them.

## RELIEF SOUGHT AND REQUEST FOR JURY TRIAL

. Plaintiffs therefore pray for judgment, as follows:

a. For general damages, according to proof at the time of trial, as appropriate to each claim alleged above;

b. For special damages, according to proof at the time of trial, as appropriate to each claim alleged above;

c. For punitive damages, according to proof at the time of trial, as appropriate to each claim alleged above;

d. For prejudgment interest and other relief and remedy, according to proof at the time of trial, as appropriate to each claim alleged above, and,

e. For such other and further relief as deemed warranted by this Court.

. Plaintiff's hereby request that the Court conduct a full trial on the matters contained herein.

Respectfully submitted on this 22nd day of October 2017,

_____ Pro Se
Abraham Mykoff
401 North Fifth Avenue
Edison, New Jersey 08817
845-202-2122

_____ Pro Se
Ron Greenberg

East Brunswick, New Jersey
732-742-4792

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

## CAUSE OF ACTION – GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

Attachment to Complaint

**PLAINTIFFS':** ABRAHAM J. MYKOFF, Rabbi of Congregation Poile Zedek,  Ron Greenberg, Trustee, Financial Committee, Congregation Poile Zedek

## ONE

**ALLEGE THAT DEFENDANTS':**   Home Depot, Inc., 2455 Paces Ferry Road, Atlanta, GA   30339  [ Corporate Headquarters ]

Cuori, aka Cuori International (H.K.) Ltd., aka Cuori Group,  aka Ningbo Prince Electric Appliance Co. Ltd., aka Millan Stylee USA, Inc.

John Doe's 1 to 100

were the legal proximate cause of damage to Plaintiffs'.  By the following acts or omissions to act, defendants negligently caused the damage to plaintiffs on 10-23-15 at Congregation Poile Zedek, formerly located at 145 Neilson Street, New Brunswick, New Jersey.

**Description of reasons for liability:**

Cuori, STORE SKU No. 682101, MODEL #HD904-A7Q, aka Cuori International (H.K.) Ltd., aka Cuori Group,  aka Ningbo Prince Electric Appliance Co. Ltd., aka Millan Stylee USA, Inc., John Does 1-100 et al caused the manufacture and/or caused the manufacture and distribution for sale to the general public  Petroleum oil filled electric radiator space heaters that were defective for fire hazard.  Home Depot, Inc. sold to Rabbi Abraham Mykoff the

electric oil filled radiator heaters purchased on 22nd October 2015 further placing the defective heater into the stream of commerce. On Friday, 23rd October 2015, aforementioned heaters failed by igniting their own volatile vapors during initial operation, [ thusly operating in this failure mode by functioning as an electrically operating pressure cooker fire bomb, ] and prior to Sabbath in the BEAMER/PODIEM area of Congregation Poile Zedek. These defects were a substantial factor that caused a heat source to ignite the heater and flammable materials in the BEAMA/PODIEM, area, and the harm set forth below. **Mr. SERGEY BELENKIN**, Congregation Poile Zedek's maintenance man, was in the building at the time of the failure, and, commencement of fire at approximately 3:45pm. Mr. Belenkin was the only individual in the building while sitting in the lower level of the Synagogue when he heard multiple explosions: three in a row BOOM, BOOM, BOOM. His initial reaction was who was in the building making such loud noises. He realized that the noises were coming from upstairs in the main Sanctuary of the Synagogue, and ran upstairs. He looked through the glass section of the middle door leading to the Sanctuary. Mr. Belenkin visually observed billowing smoke and fire coming from the right of the BEAMA/PODIUM area as it became engulfed in fire. Mr. Belenkin immediately called in this sequence the New Brunswick Police Department, #911, [ The only question asked by the dispatcher at 911 was to this effect "is there smoke" [ and, the answer was "yes" ]. Mr. Belenkin called Rabbi Mykoff, Plaintiff and Mr. Dorfman, Executor Director, who is now deceased. It is Mr. Belenkin's opinion that when the very small fire truck arrived that something was not right as they were using a very, very small hose, and no ladders; they couldn't see what they were spraying with water or if it was hitting the correct areas inside the building. Rabbi Mykoff, and Mr. Dorfman, arrived shortly thereafter, and left the Synagogue area some time later.. See Witness Statements. The entire building of

Congregation Poile Zedek very quickly became a raging and uncontrollable inferno burning until approximately 11:00pm that evening. Plaintiffs' have suffered the one hundred percent destruction of their Synagogue structure, Mr. Mykoff has suffered emotional trauma of observing the destruction by fire of the 92 year old Synagogue structure, loss of use of the Synagogue, loss of his income since 10-23-15; being unable to support [ care, comfort ] the Orthodox Community in New Brunswick, New Jersey, Sergey Belenkin, employee of Synagogue, lost his housing and income through this date; incurred medical bills as a result. Mr. Greenberg, Trustee, suffered emotional trauma, economic and non-economic losses, all religious artifacts, prayer books, historical and irreplaceable items: approximately a 20' x 20' arched stained glass window, 54 stained glass windows, 9 Torah's, 550 benches, Chandeliers, et al

## TWO

### ALLEGE THAT DEFENDANTS':

**Philadelphia Insurance Companies, aka** Philadelphia Consolidated Holding Corp. is a wholly owned subsidiary of Tokio Marine Holdings, Inc., One Bala Plaza, Suite 100, Bala Cynwyd, PA 19004

**Alan Kape, aka owner, Kape Insurance Agency, individually and, in official capacity**
**Scott Fluger, Kape Insurance Agency, individually, and in official capacity**

were a legal cause of damage to Plaintiffs'. By the following acts or omissions to act, defendant negligently caused the damage to plaintiffs on 10-23-15 at Congregation Poile Zedek, 145 Neilson Street, New Brunswick, New Jersey.

**Allege that Defendants:**

When Philadelphia Insurance Companies, et al was contacted and, Scott Fluger, and Kape Insurance Agency orally and in writing on behalf of Plaintiffs' with the latest date middle of August 2017, they refused to provide any/all documents pertaining to Congregation Poile Zedek's Insurance Policy, Account #78917916 through this date. Philadelphia Insurance Companies was advised by Scott Fluger, alleged agent on behalf of Kape Insurance Agency, not to release any documents to Rabbi Abraham Mykoff, and Trustee's. Rabbi Mykoff and Trustees served a Legal Demand on Philadelphia Insurance Companies to produce all documents/records in their control, and all data bases on Mr. Mykoff and Trustees. This request was ignored by Philadelphia Insurance Companies and Scott Fluger, Kape Insurance Agency.

Plaintiffs' were unlawfully and arbitrarily deprived of maintaining their insurance coverage by Defendants'.

**Description of reasons for liability:**

Defendants' actions are indicative of the widespread abuses by insurance companies, including, but not limited to "indiscriminate cancellation, non-renewal, premium increase and underwriting practices of commercial insurers", midterm policy cancellations, blanket non-renewals, cancellations of entire lines of insurance and midterm premium increases without adequate reasons or notice to the insureds causing irreparable harm and injury to plaintiffs by the cancellation of their insurance policy prior to the fire for violations pursuant to:

*N.J.A.C.* 11:1-20 is divided into seven sections. In general it requires approval by the

commissioner of the reasons for an insurer to cancel a policy during its term or to fail to renew it. In addition, it forbids midterm premium increases and block cancellations and restricts nonrenewal of entire lines of insurance.

*N.J.A.C.* 11:1-20.1 establishes the scope of the regulation and indicates it applies to all property and casualty/liability insurance policies except workers' compensation insurance and accident and health insurance.

*N.J.A.C.* 11:1-20.2 sets out a procedure for an insurer to obtain the commissioner's approval for the reason or standard for nonrenewals and cancellations of policies. It requires that the reason or standard for the proposed termination be submitted to the commissioner for approval at least 90 days prior to the expiration date of a policy. The commissioner reviews the submission to determine compliance with applicable statutes or regulations and must approve or disapprove the reason or standard in writing within 30 days and advise the insurer of her decision. Of course this provision does not require that each termination of a policy be approved. Thus if the underwriting standard has previously been approved it may be used without further approval as a basis for termination of coverage.

*N.J.A.C.* 11:1-20.3 establishes the requisites for cancellation or policy non-renewal, adopts a schedule for notice of cancellation and non-renewal and provides that each notice must indicate the reason for the termination. Unless the cancellation is based upon
either the existence of a moral hazard or the nonpayment of premium, the notice must also indicate that the commissioner has approved the basis for termination. Subsection (a) provides that "[e]ach renewal shall offer coverage at least as favorable to the insured as the expiring policy and at the same limits and terms, subject to changes approved by the

Commissioner that had become effective since the commencement of the current policy period." Subsection (e) requires that the notice inform the insured of the right to contest the cancellation or nonrenewal by filing a written complaint with the department. Subsection (c) defines moral hazard as either the risk, danger or probability that the insured will destroy the insured property or permit it to be destroyed for the purpose of collecting the insurance proceeds, or the substantial risk, danger or probability that the personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. It also provides that any change in the circumstances.

*N.J.A.C.* 11:1-20.4 requires that all insurance policies contain provisions clearly and specifically stating the grounds upon which the insurer will cancel or fail to renew coverage. Further, it describes the conditions or circumstances which will allow an insurer to initiate cancellation or nonrenewal procedures and includes four acceptable grounds: (1) nonpayment of premiums; (2) material misrepresentation; (3) substantial and unforseable change in the risk assumed; (4) substantial breaches of contractual duties, conditions or warranties.

*N.J.A.C.* 11:1-20.5 specifically prohibits certain practices. These include midterm premium increases, reductions in the amount or type of coverage, block cancellation or nonrenewal of entire lines of insurance, withdrawing from classes of business without approval of the commissioner and terminating an agent to achieve block cancellation or nonrenewal of entire lines of insurance.

The final two sections are *N.J.A.C.* 11:1-20.6, a severability provision, and *N.J.A.C.* 11:1-20.7, which establishes penalties and remedies for an insurer failing to adhere to the rule. The

remedies include immediate reinstatement of any policy without lapse in coverage terminated in violation of the rule.

**All Plaintiffs'** suffered and continue to suffer significant emotional trauma from **INSERT**

**PRODUCT LIABILITY 1:**   On or about 10-23-15, Plaintiff, on behalf of Congregation Poile Zedek, Rabbi Mykoff, on behalf of Congregation Poile Zedek was injured by the following product:

C\_\_\_\_ space heater

**PRODUCT LIABILITY 2:** Each of the defendants knew the product would be purchased and used without inspection for defects when the product left the control of each defendant. The product at the time of injury was being:

    USED in the manner intended by the defendants

    USED in a manner that was reasonably foreseable by defendants as involving a substantial danger not readily apparent. Adequate warnings of the danger were not given.

**PRODUCT LIABILITY 3:**

    **PLAINTIFF MYKOFF** was a **purchaser** of the product.

    Plaintiff Mykoff was a USER of the product on behalf of Congregation Poile Zedek.

    **WERE A BYSTANDER TO THE USE OF THE PRODUCT:**

    **OTHER: Robert Levinson, Sergey Belenkin**

## Plaintiffs' INJURY WAS THE LEGAL PROXIMATE RESULT OF THE FOLLOWING:

**Product Liability 4:** Count One-Strict Liability of the following defendants who

    a. WHO MANUFACTURED or assembled the product: CUORI

        John Does 1 – 50

    c. WHO SOLD the product to the public: Home Depot, Inc.

        John Does 1 – 50

**Product Liability 5:** Count Two Negligence of the following defendants who owed a duty to Plaintiffs' Rabbi Abraham Mykoff, Ron Greenberg, Trustee's Congregation Poile Zedek:

    John Does 1 - 50

**PRODUCT LIABILITY 6:** Count Three- Breach of Warranty by the following defendants

    HOME DEPOT, INC.

    CUORI, et al

    John Does 1 – 50

**PRODUCT LIABILITY 7:** The defendants who are liable to plaintiffs for other reasons and the reasons for the liability are:

    See Complaint

**SHORT TITLE:**

    MYKOFF vs HOME DEPOT, INC., COURI