Rabbi Abraham J. Mykoff, Plaintiff pro se
401 North Fifth Avenue
Edison NJ 08817
Tel: 848-202-2122

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/27/18

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**ABRAHAM MYKOFF, individually and in his capacity as Rabbi of Cong. Poile Zedek; RON GREENBERG, individually and in his capacity as Trustee of Cong. Poile Zedek,**
**Plaintiffs**

**vs.**

**Home Depot, Inc.;**
**Cuori, aka Cuori International (H.K.) Ltd., aka Cuori Group, aka Ningbo Prince Electric Appliance Co. Ltd., aka Millan Stylee USA, Inc.;**
**Philadelphia Insurance Companies , aka Philadelphia Consolidated Holding Corp., aka Tokio Marine Holdings, Inc.;**
**Intertek, Inc.;**
**Does 1 to 99,**
**Defendants**

**CASE NO.: 17 Civ. 8466 (GBD)**

**FIRST AMENDED COMPLAINT**

Demand for Jury Trial

## GENERAL ALLEGATIONS

### I. JURISDICTION AND VENUE

Plaintiffs allege that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs; and further allege that the parties are citizens of different States or countries; and on that basis plaintiffs invoke the subject matter jurisdiction of the federal district court based upon the amount in controversy and the full diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332.

### II. PARTIES

1. Plaintiff Abraham J. Mykoff, Rabbi of Congregation Poile Zedek resides in Edison, New Jersey.

2. Plaintiff Ron Greenberg, Trustee, Congregation Poile Zedek resides in East Brunswick, New Jersey.

3. Defendant Home Depot, Inc. is a Delaware Corporation with Corporate Headquarters in Atlanta, Georgia.

4. Defendant Cuori, aka Cuori International (H.K.) Ltd., aka Cuori Group, aka Ningbo Prince Electric Appliance Co. Ltd. is a foreign corporation or partnership with principal place of business in the People's Republic of China.

5. Defendant Millan Stylee USA, Inc., importer of Cuori-brand products, is a California Corporation with principal place of business in Los Angeles, California.

6. Defendant Philadelphia Insurance Companies, aka Philadelphia Consolidated Holding Corp. is a Delaware Corporation with Corporate Headquarters located at One Bala Plaza, Suite 100, Bala Cynwyd, PA 19004.

7. Defendant Tokio Marine Holdings, Inc. has its USA Corporate Headquarters located at 13403 Northwest Freeway, Houston, TX 77040, Tsuyoshi Nagano, Chairman of Board – Tokio Marine Holdings, Inc. and Nichido Fire Insurance Company, Ltd., Japan.

8. Defendant Intertek, Inc. is a multi-national entity headquartered in London, UK; and has its principal place of business and its USA Corporate Headquarters located at 3933 US Route 11, Cortland, NY 13045.

9. "CUORI" shall hereinafter refer to Cuori, Cuori International (H.K.) Ltd., aka Cuori Group, aka Ningbo Prince Elect Appliance Co. Ltd. (H.K), aka Millan Stylee USA, Inc. collectively.

10. "TOKIO" shall hereinafter refer to Philadelphia Insurance Companies, aka Philadelphia Consolidated Holding Corp. aka Tokio Marine Holdings, Inc. collectively.

### III. STATEMENT OF FACTS

#### A.    CUORI's defective heaters:

21. Sometime before plaintiff Abraham Mykoff purchased Cuori heaters on10-22-17, Ningbo Prince Electric Appliance Co. Ltd., established in 2007, manufactured and/or caused the manufacture, for sale of said oil-filled electric radiator-shaped space heaters to the general public, as a major and globally famous Chinese manufacturer and exporter especially in the industry of electric appliances. The subject Petroleum oil ["enviromental protection oil"] oil-filled electric radiator-shaped space heaters were defective because they constitute a severe fire hazard. Ningbo Prince Electric Appliance Co. exported to Millan Stylee USA, Inc. through the port of Long Beach, California.

22. As Consignee on behalf of Ningbo Prince Electric Appliance Co. Ltd., Cuori, aka Cuori International (H.K.) Ltd., aka Cuori Group were distributors for the subject heaters of identical, near identical and similar designs throughout the United States.  HOME DEPOT, INC. specifically store number #918, Milltown, New Jersey 08850 with an

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

## CAUSE OF ACTION – GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

Attachment to Complaint

**PLAINTIFFS':** ABRAHAM J. MYKOFF, Rabbi of Congregation Poile Zedek,  Ron Greenberg, Trustee, Financial Committee, Congregation Poile Zedek

## <u>ONE</u>

**ALLEGE THAT DEFENDANTS':**     Home Depot, Inc., 2455 Paces Ferry Road, Atlanta, GA   30339  [ Corporate Headquarters ]

Cuori, aka Cuori International (H.K.) Ltd., aka Cuori Group,  aka Ningbo Prince Electric Appliance Co. Ltd., aka Milian Stylee USA, Inc. *INTERTEK INC.* John Doe's 1 to 100

were the legal proximate cause of damage to Plaintiffs'.  By the following acts or omissions to act, defendants negligently caused the damage to plaintiffs on 10-23-15 at Congregation Poile Zedek, formerly located at 145 Neilson Street, New Brunswick, New Jersey.

**<u>Description of reasons for liability:</u>**

Cuori, STORE SKU No. 682101, MODEL #HD904-A7Q, aka Cuori International (H.K.) Ltd., aka Cuori Group,  aka Ningbo Prince Electric Appliance Co. Ltd., aka Milian Stylee USA, Inc., John Does 1-100 et al caused the manufacture and/or caused the manufacture and distribution for sale to the general public  Petroleum oil filled electric radiator space heaters that were defective for fire hazard.   Home Depot, Inc. sold to Rabbi Abraham Mykoff the

electric oil filled radiator heaters purchased on 22nd October 2015 further placing the defective heater into the stream of commerce.  On Friday, 23rd October 2015, aforementioned heaters failed by igniting their own volatile vapors during initial operation, [ thusly operating in this failure mode by  functioning as an electrically operating pressure cooker fire bomb, ] and prior to Sabbath in the BEAMER/PODIEM area of  Congregation Poile Zedek.  These defects were a substantial factor that caused a heat source to ignite the heater and flammable materials in the BEAMA/PODIEM,  area, and  the  harm set forth  below. **Mr. SERGEY BELENKIN**, Congregation Poile Zedek's maintenance man, was in the building at the time of the failure, and, commencement of  fire at approximately  3:45pm.   Mr.  Belenkin was the only individual in the building while sitting in the lower level of the Synagogue when he heard multiple explosions: three in a row BOOM, BOOM, BOOM. His initial reaction was who was in the building making such loud noises. He realized that the noises were coming from upstairs in the main Sanctuary of the Synagogue, and ran upstairs. He looked through  the glass section of the middle door leading to the Sanctuary. Mr. Belenkin visually observed billowing smoke and fire coming from the right  of the BEAMA/PODIUM area as it became engulfed in fire. Mr. Belenkin immediately called in this sequence the New Brunswick Police Department, #911, [ The only question asked by the dispatcher at 911 was to this effect "is there smoke" [ and, the answer was "yes" ].  Mr. Belenkin called Rabbi Mykoff, Plaintiff and Mr. Dorfman, Executor Director, who is now deceased. It  is Mr. Belenkin's opinion that when the very small fire truck arrived that something was not right as they were using a very, very small hose, and no ladders;  they couldn't see what they were spraying with water or if it was hitting the correct areas inside the building.  Rabbi Mykoff, and Mr. Dorfman, arrived shortly thereafter, and  left the Synagogue area   some time later.. See Witness Statements. The entire building of

CAUSE OF ACTION – GENERAL NEGLIGENCE,  ABRAHAM MYKOFF v HOME DEPOT, INC.

Congregation Poile Zedek very quickly became a raging and uncontrollable inferno burning until approximately 11:00pm that evening.  Plaintiffs' have suffered the one hundred percent destruction of their Synagogue structure, Mr. Mykoff has suffered emotional trauma of observing the destruction by fire of the  92 year old Synagogue structure, loss of use of the Synagogue, loss of his income since 10-23-15; being unable to support [ care, comfort ] the Orthodox Community in New Brunswick, New Jersey, Sergey Belenkin, employee of Synagogue, lost his housing and income through this date; incurred medical bills as a result. Mr. Greenberg, Trustee, suffered emotional trauma, economic and non-economic losses, all religious artifacts, prayer books, historical and irreplaceable items: approximately a 20' x 20' arched stained glass window, 54 stained glass windows, 9 Torah's, 550 benches, Chandeliers, et al

## TWO

### ALLEGE THAT DEFENDANTS':

**Philadelphia Insurance Companies, aka** Philadelphia Consolidated Holding Corp. is a wholly owned subsidiary of Tokio Marine Holdings, Inc., One Bala Plaza, Suite 100, Bala Cynwyd, PA 19004

were a legal cause of damage to Plaintiffs'.  By the following acts or omissions to act, defendant negligently caused the damage to plaintiffs on 10-23-15 at Congregation Poile Zedek, 145 Neilson Street, New Brunswick, New Jersey.

3

CAUSE OF ACTION – GENERAL NEGLIGENCE,  ABRAHAM MYKOFF v HOME DEPOT, INC.

<u>Allege that</u>

        Plaintiffs'  were unlawfully and arbitrarily deprived of maintaining their insurance coverage by  Defendants'.

**Description of reasons for liability:**

        Defendants' actions are indicative of the widespread abuses by insurance companies, including, but not limited to "indiscriminate cancellation, non-renewal, premium increase and underwriting practices of commercial insurers", midterm policy cancellations, blanket non-renewals, cancellations of entire lines of insurance and midterm premium increases without adequate reasons or notice to the insureds causing irreparable harm and injury to plaintiffs by the cancellation of their insurance policy prior to the fire for violations pursuant to:

*N.J.A.C.* 11:1-20 is divided into seven sections. In general it requires approval by the

commissioner of the reasons for an insurer to cancel a policy during its term or to fail to renew it. In addition, it forbids midterm premium increases and block cancellations and restricts nonrenewal of entire lines of insurance.

*N.J.A.C.* 11:1-20.1 establishes the scope of the regulation and indicates it applies to all property and casualty/liability insurance policies except workers' compensation insurance and accident and health insurance.

*N.J.A.C.* 11:1-20.2 sets out a procedure for an insurer to obtain the commissioner's approval for the reason or standard for nonrenewals and cancellations of policies. It requires that the reason or standard for the proposed termination be submitted to the commissioner for approval at least 90 days prior to the expiration date of a policy. The commissioner reviews the submission to determine compliance with applicable statutes or regulations and must approve or disapprove the reason or standard in writing within 30 days and advise the insurer of her decision. Of course this provision does not require that each termination of a policy be approved. Thus if the underwriting standard has previously been approved it may be used without further approval as a basis for termination of coverage.

*N.J.A.C.* 11:1-20.3 establishes the requisites for cancellation or policy non-renewal, adopts a schedule for notice of cancellation and non-renewal and provides that each notice must indicate the reason for the termination. Unless the cancellation is based upon

either the existence of a moral hazard or the nonpayment of premium, the notice must also indicate that the commissioner has approved the basis for termination. Subsection (a) provides that "[e]ach renewal shall offer coverage at least as favorable to the insured as the expiring policy and at the same limits and terms, subject to changes approved by the

5

Commissioner that had become effective since the commencement of the current policy period." Subsection (e) requires that the notice inform the insured of the right to contest the cancellation or nonrenewal by filing a written complaint with the department. Subsection (c) defines moral hazard as either the risk, danger or probability that the insured will destroy the insured property or permit it to be destroyed for the purpose of collecting the insurance proceeds, or the substantial risk, danger or probability that the personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. It also provides that any change in the circumstances.

*N.J.A.C.* 11:1-20.4 requires that all insurance policies contain provisions clearly and specifically stating the grounds upon which the insurer will cancel or fail to renew coverage. Further, it describes the conditions or circumstances which will allow an insurer to initiate cancellation or nonrenewal procedures and includes four acceptable grounds: (1) nonpayment of premiums; (2) material misrepresentation; (3) substantial and unforseeable change in the risk assumed; (4) substantial breaches of contractual duties, conditions or warranties.

*N.J.A.C.* 11:1-20.5 specifically prohibits certain practices. These include midterm premium increases, reductions in the amount or type of coverage, block cancellation or nonrenewal of entire lines of insurance, withdrawing from classes of business without approval of the commissioner and terminating an agent to achieve block cancellation or nonrenewal of entire lines of insurance.

The final two sections are *N.J.A.C.* 11:1-20.6, a severability provision, and *N.J.A.C.* 11:1-20.7, which establishes penalties and remedies for an insurer failing to adhere to the rule. The

CAUSE OF ACTION – GENERAL NEGLIGENCE,  ABRAHAM MYKOFF v HOME DEPOT, INC.

remedies include immediate reinstatement of any policy without lapse in coverage terminated in violation of the rule.

**All Plaintiffs'** suffered and continue to suffer significant emotional trauma

**PRODUCT LIABILITY 1:**      On or about 10-23-15, Plaintiff, on behalf of Congregation Poile Zedek, Rabbi Mykoff, on behalf of Congregation Poile Zedek was injured by the following product:

C_____ space heater

**PRODUCT LIABILITY 2:** Each of the defendants knew the product would be purchased and used without inspection for defects when the product  left the control of each defendant. The product at the time of injury was being:

USED in the manner intended by the defendants

USED in a manner that was reasonably foreseeable by defendants as involving a substantial danger not readily apparent. Adequate warnings of the danger were not given.

**PRODUCT LIABILITY 3:**

**PLAINTIFF MYKOFF** was a **purchaser** of the product.

Plaintiff Mykoff was a USER of the product on behalf of Congregation Poile Zedek.

**WERE A BYSTANDER TO THE USE OF THE PRODUCT:**

**OTHER: Robert Levinson, Sergey Belenkin**

CAUSE OF ACTION – GENERAL NEGLIGENCE,  ABRAHAM MYKOFF v HOME DEPOT, INC.

**Plaintiffs' INJURY WAS THE LEGAL PROXIMATE RESULT OF THE**

**FOLLOWING:**

**Product Liability 4:**  Count One-Strict Liability of the following defendants who

    a.  WHO MANUFACTURED or assembled the product:  CUORI

        John Does 1 – 50

    c.  WHO SOLD the product to the public:  Home Depot, Inc.

        John Does 1 – 50

**Product Liability 5:** Count Two Negligence of the following defendants who owed a duty

to Plaintiffs' Rabbi Abraham Mykoff,   Ron Greenberg, Trustee's Congregation Poile Zedek:

        John Does 1 - 50

**PRODUCT LIABILITY 6:** Count Three- Breach of Warranty by the following defendants :

        HOME DEPOT, INC.

        CUORI, et al

        John Does 1 – 50

**PRODUCT LIABILITY 7:** The defendants who are liable to plaintiffs for other reasons :

        Intertek, Inc.

        John Does 1 – 50

**SHORT TITLE:**

        MYKOFF vs HOME DEPOT, INC., COURI

## STATEMENT OF CLAIMS

### CLAIM 1:   GENERAL NEGLIGENCE

Plaintiffs' Abraham Mykoff and Ron Greenberg incorporate by reference the General Allegations set forth above as though set forth in full in this claim.

Defendants, and each of them, knew or should have known that the Cuori Petroleum oil filled electric radiator space heaters hereinafter, heaters, sold to Mr. Mykoff was defective and a danger to users of the heaters.

Defendants, and each of them, therefore had a duty of reasonable care to refrain from selling the defective heaters  and/or provide warnings  to the danger to potential purchasers and users of the heaters.

Despite that, defendants, and each of them, breached their duty of reasonable care and manufactured, distributed and/or sold the defective heaters, and did so without warning of the danger associated with the use of the Cuori heaters.

Additionally, once defendants became aware of recalls mandated by CPSC, defendants, and each of them, had a duty to make reasonable efforts to assure that all customers of heaters distributed in the United States were advised of said defects and/or destroyed in order to assure that no defective heaters remained in use. Defendants breached that duty of care by failing to act reasonably in recalling the defective heaters.

Furthermore, defendant HOME DEPOT, INC. knew or should have known of the danger associated with the use of Cuori's heaters containing re-used oil allegedly filled in China, and recalls from other manufactures of heaters, and should have taken reasonable action to withdraw any and all heaters from its retail sales and/or should have made

reasonable efforts to contact customers about the recall and communicate to customers about the recall and the dangers associated with these heaters. Plainiff's are informed and believe and therein allege that despite its knowledge of dangers associated with these heaters and recalls, defendant HOME DEPOT, INC. made no efforts whatsoever to withdraw these heaters from retail sales or distribution and made no efforts to notify its customers about the recalls and dangers associated with these heaters.

As a proximate result of the negligence of defendants, and each of them, the structure of Congregation Poile Zedek was destroyed by the fire caused by the defects in the CUORI heaters.

As a further proximate result of the negligence of defendants, and each of them, Plaintiffs' allege that Rabbi Abraham Mykoff lost his income after thirty years of unending service at Congregation Poile Zedek, the Community lost use of this only Synagogue after ninety-two years in New Brunswick, New Jersey, its Members lost their Rabbi, use of  and Right to Worship in their Shul, traveling Orthodox Jews lost their use of and right to worship and they had done for ninety-two years, the Synagogue sustained economic and non-economic losses as irreparable harm and injury.

Punitive damages pursuant to New Jersey The New Jersey Products Liability Act ("NJPLA") and New Jersey statute, the Consumer Fraud Act ("CFA"), to be determined according to proof at the time of trial on the grounds that defendants' conduct in failing to take sufficient action to warn purchases, owners, and users of the defective heaters and/or to take sufficient action to effectively recall the defective heaters was despicable conduct which constituted malice and oppression as defined under New Jersey Civil Code

The New Jersey Products Liability Act ("NJPLA") and New Jersey statute, the Consumer Fraud Act ("CFA"),. Plaintiffs' further alleged on information and belief that the actions upon

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

which Plaintiffs' claim for punitive damages is based were taken by the corporate defendants directly and/or the corporate defendants authorized or ratified the conduct of its direct or indirect employees, agents, distributors and/or that the actions were taken by an officer, director or managing agents of the corporations, and each of them.

## CLAIM II:  STRICT PRODUCT LIABILITY

Plaintiffs' Abraham Mykoff and Ron Greenberg incorporate by reference the General Allegations set forth above as though set forth in full in this claim.

The CUORI heaters sold to Abraham Mykoff for use by Congregation Poile Zedek was defective in manufacture and/or design and/or was defective because defendants, and each of them, failed to warn of the danger associated with the use of the heaters.

Defendants, and each of them, placed the defective CUORI heaters on the market that failed in Congreation Poile Zedek's structure by igniting their own volatile vapors during initial operation,  thusly operating in this failure mode by functioning as an electrically operating pressure cooker fire bomb, knowing they were to be used without inspection  for defects.

The defective CUORI heaters that destroyed Congregation Poile Zedek's structure were used in an intended or reasonably foreseeable manner, was in a defective condition when they left defendants possession and was the legal cause of Plaintiffs' injuries or damages.

As the proximate result of the defective product manufactured, distributed and/or sold by defendants, and each of them, Abraham Mykoff and the structure for Congregation Poile Zedek were substantially injured by the fire caused by the defects in the CUORI

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

heaters.

As a further proximate result of the defective product manufactured, distributed and/or sold by defendants, and each of them, Plaintiffs' incurred the following damages including, without limitation:

a.    Past and future economic loss and damages to be determined according to proof at the time of trial including, without limitation, economic damages for the loss of the services Abraham Mykoff provided to Congregation Poile Zedek as well as loss of business profits, income, and other economic damages:

b.    Punitive damages to be determined according to proof at the time of the trial pursuant to The New Jersey Products Liability Act ("NJPLA") and New Jersey statute, Consumer Fraud Act ("CFA"),on the grounds that defendants' conduct in failing to take sufficient action to warn purchasers, owners, and users of the defective CUORI heaters and/or to take sufficient action to effectively recall the defective CUORI heaters was despicable conduct which constituted malice and oppression as defined under New Jersey Civil Code Section New Jersey statute, the Consumer Fraud Act ("CFA"), Plaintiffs' further alleged on information and belief that the actions upon which Plaintiffs' claim for punitive damages is based were taken by the corporate defendants directly and/or the corporate defendants authorized or ratified the conduct of its employees  direct or indirect employees, agents, distributors and/or that the actions were taken by an officer, director or managing agents of the corporations, and each of them.

## CLAIM III.  GENERAL NEGLIGENCE

## ( PERSONAL INJURY, PROPERTY DAMAGE AND ECONOMIC LOSSES BY ABRAHAM MYKOFF, RON GREENBEG AS AGAINST ALL DEFENDANTS)

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

Plaintiffs' Abraham Mykoff and Ron Greenberg incorporate by reference the General Allegations set forth above as though set forth in full in this claim.

Defendants, and each of them, knew or should have known that the CUORI heaters sold to Abraham Mykoff were defective and created a danger to users of the heater.

Defendants, and each of them, therefore had a duty of care to refrain from selling the defective heater and/or to provide warnings as to the danger to potential purchases and users of the heaters.

Despite that, Defendants, and each of them, breached their duty of care and manufactured, distributed and/or sold the defective heater, and did so without warning of the danger associated with the use of the CUORI heaters.

Despite that, defendants, became aware of recalls mandated by CPSC, defendants, and each of them, had a duty of care to make reasonable efforts to assure that all of the defective CUORI heaters distributed in the United States were corrected for the defect, were reacquired by CUORI and/or were destroyed in order to assure that no defective heaters remained in use. defendants' breached that duty of care by to act reasonably in recalling the the defective heaters.

Furthermore, defendant HOME DEPOT, INC. knew or should have known of the danger associated with the use of Cuori's heaters containing re-used oil allegedly filled in China, and recalls from other manufactures of heaters, and should have taken reasonable action to withdraw any and all heaters from its retail sales and/or should have made reasonable efforts to contact customers about the recall and communicate to customers about the recall and the dangers associated with these heaters. Plaintiffs' are informed and believe and therein allege that despite its knowledge of dangers associated with these heaters and recalls, defendant HOME DEPOT, INC. made no efforts whatsoever to withdraw

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

these heaters from retail sales or distribution and made no efforts to notify its customers about the recalls and dangers associated with these, CUORI, heaters.

As the proximate result of the negligence of defendants, and each of them, Plaintiffs' were injured by the fire caused by the defect in the CURORI heaters and, in additional, the fire destroyed both real and personal property owned by plaintiffs, employees and Members/Trustee's of the Congregation.

As a proximate result of the negligence of defendants, and each of them, plaintiffs alleges that they, employees, Members of the Congregation have incurred the following damages including, without limitation:

a.    Past and future economic loss and damages to be determined according to proof at the time of trial including, without limitation, economic damages for the loss and damage to real and personal property, loss of business profits, loss of business opportunities, cost of demolition, cost to re-build another similar structure and other economic losses;

b.    Past and future pain, suffering, anxiety, grief and other recoverable emotional distress to be determined according to proof at the time of trial;

c.    Punitive damages pursuant to New Jersey Civil Code Section Consumer Fraud Act ("CFA") to be determined according to proof at the time of trial, on the ground that defendants' actions in failing to take sufficient action to warn purchasers, owners and users of the defective COURI heaters and/or take sufficient action to effectively recall the defective CUORI heaters and/or to take sufficient action to effectively recall the defective CUORI heaters was despicable conduct which constituted malice and oppression as defined under New Jersey Civil Code Section The New Jersey Products Liability Act ("NJPLA") and New Jersey statute, Consumer Fraud Act ("CFA"). Plaintiff further alleges on information and

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

belief that the actions upon which Plaintiffs' claims for punitive damages is based were taken by the corporate defendants directly and/or the corporate defendants authorized or ratified the conduct of tis employees and/or that the actions were taken by an officer, director or managing agent of the corporations, and each of them.

## CLAIM IV:  STRICT PRODUCT LIABILITY

## (PERSONAL INJURY, PROPERTY DAMAGE AND ECONOMIC LOSSES BY Plaintiffs' ABRAHAM MYKOFF, RON GREENBERG)

Plainitiff's Abraham Mykoff and Ron Greenberg incorporate by reference the General Allegations set forth above as though set forth in full in this claim.

The CUORI heater sold to Abraham Mykoff was defective in manufacture and/or design and/or was defective because defendants, and each of them, failed to warn of the danger associated with the use of the heater.

Defendants, and each of them, placed the defective CUORI heater that caused the fire on the market, knowing it was to be used without inspection for defects.

The defective COURI heater that caused the fire was used in an intended or reasonably forseeable manner, was in a defective condition when it left defendants' possession and was the legal cause of Plaintiffs' injury or damages.

As a further proximate result of the defective product manufactured, distributed and/or sold by defendants, and each of them, Plaintiffs' have incurred the following damages including, without limitation:

a.      Past and future economic loss and damages to be determined according to proof at the time of trial including, without limitation, economic damages for the loss and damage to real and personal property, loss of business profits, loss of business

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

opportunities, medical expenses and other economic losses;

b.    Past and future pain, suffering, anxiety, grief and other other recoverable emotional distress in an amount to be determined according to proof at the time of trial;

c.    Punitive damages pursuant to New Jersey Civil Code Section The New Jersey Products Liability Act ("NJPLA") and New Jersey statute, Consumer Fraud Act ("CFA") on the grounds that defendants' conduct in failing to take sufficient action warn purchasers, owners and users of the defective CUORI heaters and/or to take sufficient action to effectively recall the defective CUORI heaters was despicable conduct which constituted malice and oppression as defined under NEW JERSEY CIVIL CODE Section New Jersey The New Jersey Products Liability Act ("NJPLA") and New Jersey statute, the . Plaintiff further alleges on information and belief that the actions upon which Plaintiffs' claim for punitive damages is based were taken by the corporate defendants directly and/or the corporate defendants authorized or ratified the conduct of tis employees and/or that the actions were taken by an officer, director or managing agent of the corporations, and each of them.

## CLAIM V:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## ( Plaintiffs' Abraham Mykoff, Ron Greenberg as AGAINST ALL
## defendants' )

Plaintiff Abraham Mykoff and Ron Greenberg incorporate by reference the General Allegations set forth above as though set forth in full in this claim.

Defendants, and each of them, knew or should have known that the CUORI heaters sold to Mr. Mykoff were defective and created a danger to users of the heaters.

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

Defendants, and each of them, therefore had a duty of care to refrain from selling the defective heater and/or to provide warnings as to the danger to potential purchasers and users of the heaters.

Despite that, defendants, and each of then, breached their duty of care an manufactured, distributed and/or sold the defective heater, and did so without warning of the danger associated with the use of CUORI heaters.

Additionally, once defendants became aware and, in their control of recalls mandated by CPSC, defendants, and each of them, defendants had a duty to make reasonable efforts to assure that all defective CUORI heaters distributed in the United States were corrected for the defect, were reacquired by CUORI and/or were destroyed in order to assure that no defective heaters remained in use. Defendants breached that duty of care by failing to act reasonably in recalling the defective heaters.

Furthermore, defendant HOME DEPOT, INC. knew or should have known of the danger associated with the use of the CUORI heaters, and recalls, and should have taken reasonable action to withdraw any and all CUORI heaters from its retail sales and/or should have made reasonable efforts to contact customers about the recall and communicate to customers about the recall and the dangers associated with CUORI heaters and recalls, defendant HOME DEPOT, INC. made no efforts whatsoever to withdraw the CUORI heaters from retail sales or distribution and made no efforts to notify its customers about recalls and the dangers associated with the CUORI heaters.

Not only was Sergey Belenkin in the "zone of danger" when the Beamer/Podium area was ignited by the fire caused by defendants' negligence, it was reasonably forseeable to defendants, and each of them, that he would be present and would personally witness destruction to the Structure of Congregation Poile Zedek as the result of the fire caused by

defendants' negligence and would suffer emotional distress as a result.   Abraham Mykoff personally observed destruction to the Structure of Congregation Poile Zedek as the result of the fire caused by defendants' negligence and would suffer emotional distress as a result.

As a further proximate result of the negligence of defendants, and each of them, Plaintiffs' have incurred the following damages including, without limitation:

a.    Past and future pain, suffering, anxiety, grief and other recoverable emotional distress from personally witnessing the injuries inflicted on his domestic and business partner according to proof at the time of trial;

b.    Punitive damages pursuant to New Jersey Civil Code Section The New Jersey Products Liability Act ("NJPLA") and New Jersey statute, Consumer Fraud Act ("CFA") according to proof at the time of trial on the grounds that defendants' conduct in failing to take sufficient action to warn purchasers, owners and users of the defective CUORI heaters and/or to take sufficient action to effectively recall the defective CUORI heaters was despicable conduct which constituted malice and oppression as defined in New Jersey Civil Code. Plainitffs further alleges on information and belief that the actions upon which Plaintiffs' claim for punitive damages is based were taken by the corporate defendants directly and/or the corporate defendants authorized or ratified the conduct of its employees and/or that the actions were taken by an officer, director or managing agent of the corporations and each of them.

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

## RELIEF SOUGHT AND REQUEST FOR JURY TRIAL

Plaintiffs therefore pray for judgment, as follows:

a.   For general damages, according to proof at the time of trial, as appropriate to each claim alleged above;

b.   For special damages, according to proof at the time of trial, as appropriate to each claim alleged above;

c.   For punitive damages, according to proof at the time of trial, as appropriate to each claim alleged above;

d.   For prejudgment interest and other relief and remedy, according to proof at the time of trial, as appropriate to each claim alleged above, and,

e.   For such other and further relief as deemed warranted by this Court.

Plaintiffs hereby request that the Court conduct a full trial on the matters contained herein.

Respectfully submitted on this 22nd day of October 2017,

_____   Pro Se
Abraham Mykoff
401 North Fifth Avenue
Edison, New Jersey  08817
845-802-2122

_____   Pro Se
Ron Greenberg

East Brunswick, New Jersey
732-742-4792

COMPLAINT for GENERAL NEGLIGENCE, STRICT PRODUCT LIABILITY

**CERTIFICATION OF TIMELY FILING OF COMPLAINT**

I, Abraham Mykoff, Plaintiff and appearing *Pro Se*, do hereby certify and say:

1. I, Abrahm Mykoff, Plaintiff and appearing *Pro Se*, having the Complaint typed experienced acute and chronic hacking. A total of six computers crashed with hard drives replaced all to no avail from September 2017 through 20th October 2017. All USB thumb drives were corrupted. The hackers were able to bypass Kaspersky End Point Security, and I do not have the level of knowledge or anyone else that I know to have resolved this issue til 30th October 2017.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

22nd October 2017

Abraham Mykoff, Pro Se
401 North Fifth Avenue
Edison, New Jersey 08817
848-202-2122
e-mail: abrahammykoff@protonmail.com