SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
By: Arnold C. Lakind, Esquire
Telephone: (609) 275-0400
Fax: (609) 275-4511

THE LAW OFFICES OF HAROLD J. GERR
47 Raritan Avenue, 2nd Floor
Highland Park, NJ 08904
By: Harold J. Gerr, Esquire
Telephone: (732) 249-4600
Fax: (732) 249-0643

Attorneys For Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RABBI ABRAHAM MYKOFF and POILE ZEDEK CONGREGATION, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>HOME DEPOT, INC. and INTERTEK TESTING SERVICES, N.A., INC.,<br><br>Defendants. | Civil Action No. 18-13110 (AET/TJB)<br><br>**SECOND AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiffs, RABBI ABRAHAM MYKOFF and POILE ZEDEK

CONGREGATION, INC. ("Poile Zedek"), whose street address is c/o Rabbi

Abraham Mykoff, 401 North Fifth Avenue, Edison, New Jersey 08817, by way of Complaint against HOME DEPOT, INC. ("Home Depot") and INTERTEK TESTING SERVICES, N.A., INC. ("Intertek") allege that:

## I. NATURE OF ACTION

1. This Complaint asserts claims under the New Jersey Product Liability Act, N.J.S.A. 2A:58C-1 *et seq*, the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 *set seq*, against Home Depot, Inc. This action also asserts claims for negligence against Intertek Testing Services, N.A., Inc.

## II. THE PARTIES

2. Plaintiff, Congregation Poile Zedek, Inc., is a New Jersey non-profit corporation incorporated prior to 2017.

3. Plaintiff, Rabbi Abraham Mykoff, is and, at relevant times, was the spiritual leader of Poile Zedek and its Chief Operating Officer.

4. At all relevant times, the principal place of worship of Poile Zedek was located at 145 Neilson Street, New Brunswick, New Jersey (the "Synagogue").

5. Plaintiff, Rabbi Abraham Mykoff, is a citizen of the State of New Jersey residing in the Township of Edison, County of Middlesex.

6. Defendant, Home Depot, is a Delaware corporation with its principal place of business at 2455 Paces Ferry Road, in the City of Atlanta, State of Georgia.

7. Defendant, Intertek Testing Services, N.A., Inc, is a multi-national entity with its principal place of business in the United States located at 3933 Route 11, in the City of Cortland, State of New York.

### III. JURISDICTION AND VENUE

8. This Court has diversity jurisdiction over this action under 28 U.S.C. §1332 because Plaintiff and all Defendants are citizens of different states and the amount in controversy exceeds $75,000.

9. Venue is proper in this District because the events giving rise to the Complaint occurred in the City of New Brunswick, New Jersey.

### IV. THE BACKGROUND FACTS

10. On or about October 22, 2015, Rabbi Abraham Mykoff, acting on behalf of Poile Zedek, purchased two oil-filled electric space heaters bearing model number HD904-A7Q, from a Home Depot store located in the Township of Milltown, State of New Jersey.

11. The heaters were manufactured for and sold exclusively by Home Depot.

12. The heaters were represented by Defendants as suitable for use within commercial and residential buildings.

13. Rabbi Mykoff placed the heaters in the sanctuary of the Poile Zedek Synagogue on or about October 22, 2015.

14. On October 23, 2015, one of the two space heaters ignited and/or exploded causing a fire in the Poile Zedek building.

15. As a consequence of the fire, the Synagogue and substantially all of its contents were destroyed.

16. Since the date of the fire, the building in which the Poile Zedek congregation worshiped has been unfit for use, the Congregation has had no place of worship, and Rabbi Mykoff has not been paid compensation.

## V.  THE CLAIMS

### Count I

### Products Liability Claim Against
### Home Depot, Inc.

17. Plaintiffs repeat and incorporate herein the allegations of the previous paragraphs of this Complaint as if fully set forth herein at length.

18. N.J.S.A. 2A:58C-2 provides in part as follows:

A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that

the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

19. Home Depot is a "seller" as that term is used in N.J.S.A. 2A:58C-2.

20. As the seller of the space heaters, Home Depot, Inc. owed a duty to the Plaintiffs to assure that the space heaters were reasonably fit, suitable and/or safe for their intended purpose, which was to safely provide heat within a building.

21. The space heaters were not reasonably fit, suitable or safe for their intended purpose.

22. It was foreseeable to Home Depot that Plaintiffs would use the space heaters in the manner which they did.

23. As a consequence of the fact that the space heaters were not reasonably fit, suitable or safe for their intended purpose, the space heaters ignited and/or exploded destroying the Synagogue and most of its contents.

24. As a consequence of the fact that the space heaters were not reasonably fit, suitable or safe for their intended purpose, the space heaters ignited and/or exploded, causing Congregation Poile Zedek to discontinue its use of the Synagogue and Rabbi Mykoff to sustain a loss of income.

25. The space heaters purchased by Plaintiffs are designed to use electricity as a power source to heat a wire heating element embedded in a metal tube containing oil. The heating element in turn transmits heat to a liquid, in this case, used automotive crank case oil, located in a "tubular element" consisting of a network of seven metal fins constructed of spot welded mild sheet steel. The fins are distributed vertically on the front of the space heater. The heat from the oil is conducted to the fins and radiated into the surrounding space.

26. The space heater purchased by Plaintiffs contained a thermostat which is designed to allow the user to set a target temperature, and a thermal safety cut-off device which is designed to cycle the space heater off if the oil temperature becomes dangerously high.

27. The space heaters referred to in Paragraph 10 of the Complaint were designed in a defective manner for, among other reasons, those set forth in paragraphs 28 to 33 below.

28. The space heaters referred to in Paragraph 10 of the Complaint were designed in a defective manner because, among other reasons, they used recycled crank case oil:

   a. Which contained sludge and contaminants that interfered with the uniform distribution of heat in the oil causing overheating of the oil at the base of

the unit but less heat in the area monitored by the safety cut-off device which prevented the safety cut-off device from turning the space heater off before the oil temperature reached the ignition or flash point.

  b. Which produced a variable vapor pressure which caused the fins, seams and/or joints of the space heater to rupture spewing burning oil into the Synagogue.

  c. Which had a lower ignition and/or flash point than needed for the heater to operate safely.

  d. Which had unpredictable ignition and flash points.

  29. The space heaters referred to in Paragraph 10 of the Complaint were designed in a defective manner because:

  a. Among other reasons, the safety cut-off device was not located in an area which would permit contact with the oil at a location where it was at its hottest.

  b. It lacked an audible device to alert users of an impending catastrophic failure.

  c. The temperature at which the safety switch would cycle the heater off was set too high.

  d. The space heater did not contain a fuseable link which would

permanently cut off power in the event of the occurrence of a dangerous condition.

  e. They lacked a surge protector to prevent arcing in the event of a power surge.

  30. The space heaters referred to in Paragraph 10 of he Complaint were designed in a defective manner because:

  a. The thermostat was made of a metal prone to produce electric arcs and sparks which caused fire and/or an explosion.

  b. The space heaters were designed in such a fashion as to produce dangerous arcing and sparking in normal use.

  c. Use of flat brass alloy contacts in the space heaters' thermostats was contrary to industry standards which required hemispherical tungsten contacts.

  31. The space heaters referred to in Paragraph 10 of he Complaint were designed in a defective manner because the metal used to fabricate the fins in which the oil was collected was not of sufficient strength to contain the pressure produced by vapors generated by the oil within the tubular structure.

  32. The space heaters referred to in Paragraph 10 of he Complaint were designed in a defective manner because the metal used to fabricate the joints and seams in the fins in which the oil was stored was not of sufficient strength to

contain the pressure produced by vapors generated by the oil within the tubular structure.

33. The space heaters referred to in Paragraph 10 of he Complaint were designed in a defective manner because they did not prevent fire and/or explosions.

34. The space heaters referred to in Paragraph 10 of the Complaint deviated from the design specifications, formulae, or performance standards of otherwise identical units manufactured to the same manufacturing specifications because among other reasons:

   a. The oil used to fill the space heater was heterogenous and had variable ignition and flash points which were exceeded before the safety cut-off device was triggered.

   b. The safety cut-off device malfunctioned because it failed to turn off the space heater before the oil reached its ignition and/or flash point.

   c. The thermostat malfunctioned and caused an arc which caused a fire and/or explosion.

   d. A nearly identical space heater was recalled by the United States Consumer Products Safety Commission, but Defendant, Home Depot, continued to market and sell the unit without making safety improvements to address the recall.

35. The space heaters referred to in Paragraph 10 of he Complaint failed to contain adequate warnings or instructions because:

a. In order to induce sales, Home Depot represented that the space heaters were "ETL Listed" but did not warn that they were not certified as safe for their intended use.

b. Home Depot misrepresented the space heater as "ETL Listed."

c. Home Depot failed to inform Plaintiffs that comparable units had been recalled, by the United States Consumer Products Safety Commission while continuing to market and sell the unit without correcting the defects which resulted in the recall.

d. Home Depot assured all consumers that the space heaters were "safe" and "tranquil" and they were not.

e. Home Depot failed to warn users that the recycled crank case oil had unpredictable ignition and flash points.

f. Home Depot failed to warn users that the space heaters lacked adequate safety devices, among them, a fusible link which would permanently cut off power in the event of a dangerous condition and/or an audible alarm set to trigger if a dangerous condition developed.

g. It did not warn consumers to use a surge protector.

36. Had Home Depot given an appropriate warning, the Plaintiffs would have heeded that warning.

37. Had the Plaintiffs heeded a warning, the damages sustained by them would have been avoided.

38. Plaintiffs were caused to suffer damages because the space heaters sold by Home Depot were not reasonably fit, suitable or safe for their intended purpose.

WHEREFORE, Plaintiffs seek a judgment against Defendant, Home Depot, for

    a. Compensatory damages;

    b. Punitive damages;

    c. Interest;

    d. Costs;

    e. Attorneys fees; and

    f. Such other relief as the Court may deem just.

### Count II

### Consumer Fraud Act Claim Against Home Depot, Inc.

39. Plaintiffs repeat and incorporate herein the allegations of the previous paragraphs of this Complaint as if fully set forth herein at length.

40. N.J.S.A. 56:8-2 provides in part as follows:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . ..

41. Home Depot made a "sale" of the space heaters as that term is defined in N.J.S.A. 56:8-1.

42. Plaintiff, Abraham Mykoff, was a consumer of the space heaters referred to in Paragraph 10 of this Complaint.

43. Plaintiff, Poile Zedek, was a consumer of the space heaters referred to in Paragraph 10 of this Complaint.

44. Home Depot used and/or employed an unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of a material fact because, among other things:

  a. Home Depot represented in its advertisement that the space heaters were "ETL Listed" but the certification number on the product corresponded to that for a fabric steamer.

  b. Home Depot failed to inform Plaintiffs that comparable units had been recalled, by the United States Consumer Products Safety Commission but Defendant, Home Depot, continued to market and sell the space heaters without correcting the defects which resulted in the recall.

  c. Home Depot assured all consumers that the space heaters were "safe" and "tranquil" and they were not.

  d. The space heaters should not have been sold as new products because they contained used automotive crank case oil.

  e. Home Depot concealed from consumers that the space heaters contained used automotive crank case oil which had unpredictable ignition and flash points.

  f. Home Depot misrepresented the quality of the oil used in the space heater by calling it environmental protection oil, which produced a favorable connotation, when in fact the oil was used contaminated automotive crank case oil with an unpredictable ignition and flash point.

 45. The conduct of Home Depot described in the preceding paragraphs of this Complaint caused the Plaintiffs to sustain damages.

 46. Plaintiffs suffered an ascertainable economic loss, destruction of the Synagogue and its contents, and loss of income to Rabbi Mykoff, as a result of the

conduct of Home Depot described in this Count II.

WHEREFORE, Plaintiffs seek a judgment against Defendant, Home Depot, for

    a.    Compensatory damages;

    b.    Treble damages;

    c.    Punitive damages;

    d.    Interest;

    e.    Costs;

    f.    Attorneys fees; and

    g.    Such other relief as the Court may deem just.

## COUNT III

### Negligence Claim Against
### Intertek

47. Plaintiffs repeat and incorporate herein the allegations of the previous paragraphs of this Complaint as if fully set forth herein at length.

48. Intertek represents to the public that an ETL Listing "is proof that your product has been independently tested and meets the applicable public standards."

49. Applicable public standards include American National Standards

(ANSI), American Society of Mechanical Engineers (ASME) and the Institute of Electrical and Electronics (IEEE) standards.

50. The space heaters did not meet applicable public standards.

51. The space heaters were not adequately tested because:

a. They were defectively designed as set forth in Count I of this Complaint and were therefore unsafe.

b. Variations in the ignition and flash point of the crank case oil rendered the space heaters unsafe.

c. Intertek tested an insufficient sample of space heaters to warrant an ETL listing.

d. Intertek failed to use heated oil and/or water to test the strength of the tubular enclosures which would have revealed insufficiencies in the strength of the oil containing components.

52. Intertek improperly used UL standard 1278 which is only applicable to silicon filled space heaters.

53. Had the space heaters been adequately tested, the defective design features would have been identified.

54. Had Plaintiffs been aware of defects in the design of the space heaters, they would not have purchased the space heaters.

55. Intertek was negligent in its testing of the space heaters.

56. As a result of the negligence of Intertek, Plaintiffs were made to suffer damages.

WHEREFORE, Plaintiffs seek a judgment against Defendant, Intertek, for

    a. Compensatory damages;

    b. Punitive damages;

    c. Interest;

    d. Costs;

    e. Attorneys fees; and

    f. Such other relief as the Court may deem just.

## JURY DEMAND

Plaintiffs demand a trial by jury.

                                              Respectfully submitted,

                                              _s/Arnold C. Lakind_

Dated: January 9, 2019           Arnold C. Lakind