UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------------------X

RABBI ABRAHAM MYKOFF and POILE ZEDEK CONGREGATION, INC.,

                              Plaintiffs,

-against-

HOME DEPOT, INC. and INTERTEK TESTING SERICES, N.A., INC.,

                              Defendants.

-----------------------------------------------------------------------X

Civil Action No.: 18-13110

**HOME DEPOT U.S.A., INC.'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT AND JURY DEMAND**

Defendant, HOME DEPOT U.S.A., INC., i/s/h/a "HOME DEPOT, INC.," (hereinafter "Home Depot"), by its attorneys Lewis Brisbois Bisgaard & Smith, LLP, as and for its Answer to Plaintiffs RABBI ABRAHAM MYKOFF AND POILE ZEDEK CONGREGATION, INC.'s SECOND AMENDED COMPLAINT, respectfully states upon information and belief as follows:

## I. NATURE OF ACTION

1.      This Complaint asserts claims under the New Jersey Product Liability Act, N.J.S.A. 2A:58C-1 *et seq*, the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 *set seq*, against Home Depot, Inc. This action also asserts claims for negligence against Intertek Testing Services, N.A., Inc.

**RESPONSE**: No response required.

## II. THE PARTIES

2.      Plaintiff, Congregation Poile Zedek, Inc., is a New Jersey non-profit

corporation incorporated prior to 2017.

**RESPONSE**:  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph "2" of the Second Amended Complaint.


3.      Plaintiff, Rabbi Abraham Mykoff, is and, at relevant times, was the spiritual

leader of Poile Zedek and its Chief Operating Officer.

**RESPONSE**:  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph "3" of the Second Amended Complaint.


4.      At all relevant times, the principal place of worship of Poile Zedek was located

at 145 Neilson Street, New Brunswick, New Jersey (the "Synagogue").

**RESPONSE**:  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph "4" of the Second Amended Complaint.


5.      Plaintiff, Rabbi Abraham Mykoff, is a citizen of the State of New Jersey

residing in the Township of Edison, County of Middlesex.

**RESPONSE**:  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph "5" of the Second Amended Complaint.

6.    Defendant, Home Depot, is a Delaware corporation with its principal place of business at 2455 Paces Ferry Road, in the City of Atlanta, State of Georgia.

**RESPONSE:** Admits the allegations contained in paragraph "6" of the Second Amended Complaint.

7.    Defendant, Intertek Testing Services, N.A., Inc. is a multi-national entity with its principal place of business in the United States located at 3933 Route 11, in the City of Cortland, State of New York.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "7" of the Second Amended Complaint.

### III. JURISDICTION AND VENUE

8.    This Court has diversity jurisdiction over this action under 28 U.S.C. §1332 because Plaintiff and all Defendants are citizens of different states and the amount in controversy exceeds $75,000.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained paragraph "8" of the Second Amended Complaint.

9.    Venue is proper in this District because the events giving rise to the Complaint occurred in the City of New Brunswick, New Jersey.

**RESPONSE**: Admits the allegations contained in paragraph "9" of the Second Amended Complaint.

## IV. THE BACKGROUND FACTS

10.    On or about October 22, 2015, Rabbi Abraham Mykoff, acting on behalf of Poile Zedek, purchased two oil-filled electric space heaters bearing model number HD904-A7Q, from a Home Depot store located in the Township of Milltown, State of New Jersey.

**RESPONSE**: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "10" of the Second Amended Complaint.

11.    The heaters were manufactured for and sold exclusively by Home Depot.

**RESPONSE**: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "11" of the Second Amended Complaint.

12.    The heaters were represented by Defendants as suitable for use within commercial and residential buildings.

**RESPONSE**: Denies the allegations contained in paragraph "12" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

13.    Rabbi Mykoff placed the heaters in the sanctuary of the Poile Zedek Synagogue on or about October 22, 2015.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "13" of the Second Amended Complaint.

14.    On October 23, 2015, one of the two space heaters ignited and/or exploded causing a fire in the Poile Zedek building.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "14" of the Second Amended Complaint.

15.    As a consequence of the fire, the Synagogue and substantially all of its contents were destroyed.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "15" of the Second Amended Complaint.

16.    Since the date of the fire, the building in which the Poile Zedek congregation worshiped has been unfit for use, the Congregation has had no place of worship, and Rabbi Mykoff has not been paid compensation.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "16" of the Second Amended Complaint.

## V. THE CLAIMS

### Count I
### Products Liability Claim Against
### Home Depot, Inc.

17.    Plaintiffs repeat and incorporate herein the allegations of the previous paragraphs of this Complaint as if fully set forth herein at length.

**RESPONSE**:  Repeats and reiterates each and every response to the allegations contained in paragraphs "1" through "16" of the Second Amended Complaint with the same force and effect as if set forth herein at length.

18.    N.J.S.A. 2A:58C-2 provides in part as follows:

A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

**RESPONSE**:  No response is needed.

19.    Home Depot is a "seller" as that term is used in N.J.S.A. 2A:58C-2.

**RESPONSE**:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "19" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

20.    As the seller of the space heaters, Home Depot, Inc. owed a duty to the Plaintiffs to assure that the space heaters were reasonably fit, suitable and/or safe for their intended purpose, which was to safely provide heat within a building.

**RESPONSE**: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "20" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

21.    The space heaters were not reasonably fit, suitable or safe for their intended purpose.

**RESPONSE**: Denies the allegations contained in paragraph "21" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

22.    It was foreseeable to Home Depot that Plaintiffs would use the space heaters in the manner which they did.

**RESPONSE**: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "22" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

23.    As a consequence of the fact that the space heaters were not reasonably fit, suitable or safe for their intended purpose, the space heaters ignited and/or exploded destroying the Synagogue and most of its contents.

**RESPONSE**: Denies the allegations contained in paragraph "23" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

24.     As a consequence of the fact that the space heaters were not reasonably fit, suitable or safe for their intended purpose, the space heaters ignited and/or exploded, causing Congregation Poile Zedek to discontinue its use of the Synagogue and Rabbi Mykoff to sustain a loss of income.

**RESPONSE**: Denies the allegations contained in paragraph "24" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

25.     The space heaters purchased by Plaintiffs are designed to use electricity as a power source to heat a wire heating element embedded in a metal tube containing oil. The heating element in turn transmits heat to a liquid, in this case, used automotive crank case oil, located in a "tubular element" consisting of a network of seven metal fins constructed of spot welded mild sheet steel. The fins are distributed vertically on the front of the space heater. The heat from the oil is conducted to the fins and radiated into the surrounding space.

**RESPONSE**: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "25" of the Second Amended Complaint.

26.     The space heater purchased by Plaintiffs contained a thermostat which is designed to allow the user to set a target temperature, and a thermal safety cut-off device which is designed to cycle the space heater off if the oil temperature becomes dangerously high.

**RESPONSE**:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "26" of the Second Amended Complaint.

27.    The space heaters referred to in Paragraph 10 of the Complaint were designed in a defective manner for, among other reasons, those set forth in paragraphs 28 to 33 below.

**RESPONSE**:  Denies the allegations contained in paragraph "27" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

28.    The space heaters referred to in Paragraph 10 of the Complaint were designed in a defective manner because, among other reasons, they used recycled crank case oil:

a.    Which contained sludge and contaminants that interfered with the uniform distribution of heat in the oil causing overheating of the oil at the base of the unit but less heat in the area monitored by the safety cut-off device which prevented the safety cut-off device from turning the space heater off before the oil temperature reached the ignition or flash point.

b.    Which produced a variable vapor pressure which caused the fins, seams and/or joints of the space heater to rupture spewing burning oil into the Synagogue.

c.    Which had a lower ignition and/or flash point than needed for the heater to operate safely.

d.    Which had unpredictable ignition and flash points.

**RESPONSE:** Denies the allegations contained in paragraph "28" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

29.    The space heaters referred to in Paragraph 10 of the Complaint were designed in a defective manner because:

a.    Among other reasons, the safety cut-off device was not located in an area which would permit contact with the oil at a location where it was at its hottest.

b.    It lacked an audible device to alert users of an impending catastrophic failure.

c.    The temperature at which the safety switch would cycle the heater off was set too high.

d.    The space heater did not contain a fuseable link which would permanently cut off power in the event of the occurrence of a dangerous condition.

e.    They lacked a surge protector to prevent arcing in the event of a power surge.

**RESPONSE:** Denies the allegations contained in paragraph "29" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

30.    The space heaters referred to in Paragraph 10 of he Complaint were designed in a defective manner because:

a.    The thermostat was made of a metal prone to produce electric arcs and sparks which caused fire and/or an explosion.

b.     The space heaters were designed in such a fashion as to produce dangerous arcing and sparking in normal use.

c.     Use of flat brass alloy contacts in the space heaters' thermostats was contrary to industry standards which required hemispherical tungsten contacts.

**RESPONSE:** Denies the allegations contained in paragraph "30" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

31.     The space heaters referred to in Paragraph 10 of he Complaint were designed in a defective manner because the metal used to fabricate the fins in which the oil was collected was not of sufficient strength to contain the pressure produced by vapors generated by the oil within the tubular structure.

**RESPONSE:** Denies the allegations contained in paragraph "31" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

32.     The space heaters referenced to in Paragraph 10 of he Complaint were designed in a defective manner because the metal used to fabricate the joints and seams in the fins in which the oil was stored was not of sufficient strength to contain the pressure produced by vapors generated by the oil within the tubular structure.

**RESPONSE:** Denies the allegations contained in paragraph "32" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

33.    The space heaters referred to in Paragraph 10 of he Complaint were designed in a defective manner because they did not prevent fire and/or explosions.

**RESPONSE:** Denies the allegations contained in paragraph "33" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

34.    The space heaters referred to in Paragraph 10 of the Complaint deviated from the design specifications, formulae, or performance standards of otherwise identical units manufactured to the same manufacturing specifications because among other reasons:

a.    The oil used to fill the space heater was heterogenous and had variable ignition and flash points which were exceeded before the safety cut-off device was triggered.

b.    The safety cut-off device malfunctioned because it failed to turn off the space heater before the oil reached its ignition and/or flash point.

c.    The thermostat malfunctioned and caused an arc which caused a fire and/or explosion.

d.    A nearly identical space heater was recalled by the United States Consumer Products Safety Commission, but Defendant, Home Depot, continued to market and sell the unit without making safety improvements to address the recall.

**RESPONSE:** Denies the allegations contained in paragraph "34" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

35.    The space heaters referred to in Paragraph 10 of he Complaint failed to contain adequate warnings or instructions because:

a.    In order to induce sales, Home Depot represented that the space heaters were "ETL Listed" but did not warn that they were not certified as safe for their intended use.

b.    Home Depot misrepresented the space heater as "ETL Listed."

c.    Home Depot failed to inform Plaintiffs that comparable units had been recalled, by the United States Consumer Products Safety Commission while continuing to market and sell the unit without correcting the defects which resulted in the recall.

d.    Home Depot assured all consumers that the space heaters were "safe" and "tranquil" and they were not.

e.    Home Depot failed to warn users that the recycled crank case oil had unpredictable ignition and flash points.

f.    Home Depot failed to warn users that the space heaters lacked adequate safety devices, among them, a fusible link which would permanently cut off power in the event of a dangerous condition and/or an audible alarm set to trigger if a dangerous condition developed.

g.    It did not warn consumers to use a surge protector.

**RESPONSE:**  Denies the allegations contained in paragraph "35" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

36.    Had Home Depot given an appropriate warning, the Plaintiffs would have heeded that warning.

**RESPONSE**:  Denies the allegations contained in paragraph "36" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

37.    Had the Plaintiffs heeded a warning, the damages sustained by them would have been avoided.

**RESPONSE**:  Denies the allegations contained in paragraph "37" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

38.    Plaintiffs were caused to suffer damages because the space heaters sold by Home Depot were not reasonably fit, suitable or safe for their intended purpose.

**RESPONSE**:  Denies the allegations contained in paragraph "38" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

### Count II

#### Consumer Fraud Act Claim Against
#### Home Depot, Inc.

39.    Plaintiffs repeat and incorporate herein the allegations of the previous paragraphs of this Complaint as if fully set forth herein at length.

**RESPONSE:** Repeats and reiterates each and every response to the allegations contained in paragraphs "1" through "38" of the Second Amended Complaint with the same force and effect as if set forth herein at length.

40.    N.J.S.A. 56:8-2 provides in part as follows:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . .

**RESPONSE:** No response required.

41.    Home Depot made a "sale" of the space heaters as that term is defined in N.J.S.A. 56:8-1.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "41" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

42.    Plaintiff, Abraham Mykoff, was a consumer of the space heaters referred to in Paragraph 10 of this Complaint.

**RESPONSE**: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "42" of the Second Amended Complaint.

43.    Plaintiff, Poile Zedek, was a consumer of the space heaters referred to in Paragraph 10 of this Complaint.

**RESPONSE**: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "43" of the Second Amended Complaint.

44.    Home Depot used and/or employed an unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of a material fact because, among other things:

a.    Home Depot represented in its advertisement that the space heaters were "ETL Listed" but the certification number on the product corresponded to that for a fabric steamer.

b.    Home Depot failed to inform Plaintiffs that comparable units had been recalled, by the United States Consumer Products Safety Commission but Defendant, Home Depot, continued to market and sell the space heaters without correcting the defects which resulted in the recall.

c.    Home Depot assured all consumers that the space heaters were "safe" and "tranquil" and they were not.

d.    The space heaters should not have been sold as new products because they contained used automotive crank case oil.

e.      Home Depot concealed from consumers that the space heaters contained used automotive crank case oil which had unpredictable ignition and flash points.

f.      Home Depot misrepresented the quality of the oil used in the space heater by calling it environmental protection oil, which produced a favorable connotation, when in fact the oil was used contaminated automotive crank case oil with an unpredictable ignition and flash point.

**RESPONSE**: Denies the allegations contained in paragraph "44" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

45.      The conduct of Home Depot described in the preceding paragraphs of this Complaint caused the Plaintiffs to sustain damages.

**RESPONSE**: Denies the allegations contained in paragraph "45" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

46.      Plaintiffs suffered an ascertainable economic loss, destruction of the Synagogue and its contents, and loss of income to Rabbi Mykoff, as a result of the conduct of Home Depot described in this Count II.

**RESPONSE**: Denies the allegations contained in paragraph "46" of the Second Amended Complaint and refers all questions of the law to the Court for determination.

## COUNT III

### Negligence Claim Against
### Intertek

47.     Plaintiffs repeat and incorporate herein the allegations of the previous paragraphs of this Complaint as if fully set forth herein at length.

**RESPONSE**:  Repeats and reiterates each and every response to the allegations contained in paragraphs "1" through "46" of the Second Amended Complaint with the same force and effect as if set forth herein at length.

48.     Intertek represents to the public that an ETL Listing "is proof that your product has been independently tested and meets the applicable public standards."

**RESPONSE**:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "48" of the Second Amended Complaint.

49.     Applicable public standards include American National Standards (ANSI), American Society of Mechanical Engineers (ASME) and the Institute of Electrical and Electronics (IEEE) standards.

**RESPONSE**:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "49" of the Second Amended Complaint.

50.     The space heaters did not meet applicable public standards.

**RESPONSE**: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "50" of the Second Amended Complaint.

51.    The space heaters were not adequately tested because:

a.    They were defectively designed as set forth in Count I of this Complaint and were therefore unsafe.

b.    Variations in the ignition and flash point of the crank case oil rendered the space heaters unsafe.

c.    Intertek tested an insufficient sample of space heaters to warrant an ETL listing.

d.    Intertek failed to use heated oil and/or water to test the strength of the tubular enclosures which would have revealed insufficiencies in the strength of the oil containing components.

**RESPONSE**: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "51" of the Second Amended Complaint.

52.    Intertek improperly used UL standard 1278 which is only applicable to silicon filled space heaters.

**RESPONSE**: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "52" of the Second Amended Complaint.

53.     Had the space heaters been adequately tested, the defective design features would have been identified.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "53" of the Second Amended Complaint.

54.     Had Plaintiffs been aware of defects in the design of the space heaters, they would not have purchased the space heaters.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "54" of the Second Amended Complaint.

55.     Intertek was negligent in its testing of the space heaters.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "55" of the Second Amended Complaint.

56.     As a result of the negligence of Intertek, Plaintiffs were made to suffer damages.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "56" of the Second Amended Complaint.

## SEPARATE DEFENSES

### AS AND FOR A FIRST SEPARATE DEFENSE

That any injuries or damages sustained by Plaintiffs, as alleged in the SECOND AMENDED COMPLAINT, were caused in whole or in part by the contributory or comparative negligence and/or culpable conduct of said Plaintiffs and not as a result of any negligence and/or culpable conduct on the part of HOME DEPOT.

### AS AND FOR A SECOND SEPARATE DEFENSE

The SECOND AMENDED COMPLAINT fails to state a cause of action upon which relief may be granted, cognizable in equity or law, against HOME DEPOT, and must therefore be dismissed.

### AS AND FOR A THIRD SEPARATE DEFENSE

If the Plaintiffs sustained any damages as alleged in the SECOND AMENDED COMPLAINT, which allegations are expressly denied, then same were sustained because of the negligence and/or culpable conduct of a third party over whom HOME DEPOT did not and was not obligated to exercise supervision or control.

### AS AND FOR A FOURTH SEPARATE DEFENSE

That in the event Plaintiffs recover a verdict or judgment against HOME DEPOT, then said verdict or judgment must be reduced and set off by those amounts which have been, or will, with reasonable certainty, replace or indemnify Plaintiffs in whole or in part, for any past or future claims, or economic loss, from any collateral source including but not limited to insurance, social security, workers' compensation or employee benefit programs.

## AS AND FOR A FIFTH SEPARATE DEFENSE

The liability of HOME DEPOT, if any, to the Plaintiffs for non-economic loss is limited to its equitable share, determined in accordance with the relative culpability of all persons or entities contributing to the total liability for non-economic loss, including to be named parties and others over whom Plaintiffs could have obtained personal jurisdiction with due diligence.

## AS AND FOR A SIXTH SEPARATE DEFENSE

The damages claimed by Plaintiffs, which are expressly denied, were not proximately caused by HOME DEPOT.

## AS AND FOR A SEVENTH SEPARATE DEFENSE

The complaint should be dismissed for failure to join (a) necessary party(ies).

## AS AND FOR A EIGHTH SEPARATE DEFENSE

The SECOND AMENDED COMPLAINT and each cause of action therein, is barred by the applicable statute of limitations.

## AS AND FOR A NINTH SEPARATE DEFENSE

Upon information and belief the injuries or damages alleged by Plaintiffs, all of which are expressly denied, were caused by the intervening, interceding and superseding acts of third parties not under the control of HOME DEPOT.

## AS AND FOR A TENTH SEPARATE DEFENSE

At the time and place mentioned in the SECOND AMENDED COMPLAINT, HOME DEPOT did not have any legal duty to Plaintiffs nor did HOME DEPOT violate any duty which may be found to exist.

## AS AND FOR A ELEVENTH SEPARATE DEFENSE

At the time and place mentioned in the SECOND AMENDED COMPLAINT, HOME DEPOT was not guilty of and is not liable for any negligence which was a proximate cause of the alleged damages of which Plaintiffs complain.

## AS AND FOR A TWELFTH SEPARATE DEFENSE

Plaintiffs failed to mitigate or otherwise act to lessen or reduce the alleged injuries.

## AS AND FOR A THIRTEENTH SEPARATE DEFENSE

HOME DEPOT owed no duty or responsibility to safeguard the Plaintiffs and exercised no control over their activities.

## AS AND FOR A FOURTEENTH SEPARATE DEFENSE

At the time of the alleged incident, the Plaintiffs were engaged in activity which they knew to be hazardous in nature and, therefore, the Plaintiffs assumed the risk and consequences inherent in such activity.

## AS AND FOR A FIFTEENTH SEPARATE DEFENSE

The incident, the injuries, and the damages complained of were caused by the unauthorized, unintended, improper, and/or negligent use or abuse of the product and as the result of Plaintiffs' failure to exercise reasonable and ordinary care, caution, or vigilance.

## AS AND FOR A SIXTEENTH SEPARATE DEFENSE

In the event that any person or entity liable or claimed to be liable for the injury alleged in this action has been given or may hereafter be given a release or covenant not to sue, HOME DEPOT will be entitled to protection under applicable law and the corresponding reduction of any damages that may be determined to be due against HOME DEPOT.

### AS AND FOR A SEVENTEENTH SEPARATE DEFENSE

Upon information and belief, that any and all risks, hazards, defects or dangers alleged were open, obvious and apparent, natural and inherent and known, or should have been known to the Plaintiffs herein, and the Plaintiffs voluntarily assumed all such risks, hazards, defects and dangers.

### AS AND FOR A EIGHTEENTH SEPARATE DEFENSE

Liability against defendant HOME DEPOT is precluded by the state of the art defense, the obvious-danger/consumer expectations defense, and the unavoidably unsafe defense.

### AS AND FOR A NINETEENTH SEPARATE DEFENSE

The incident, the injuries, and the damages complained of were caused by the unauthorized, unintended, improper, and/or negligent use or abuse of the product and as the result of Plaintiffs' failure to exercise reasonable and ordinary care, caution, or vigilance.

### AS AND FOR A TWENTIETH SEPARATE DEFENSE

HOME DEPOT made no warranties to Plaintiffs.

### AS AND FOR A TWENTY-FIRST SEPARATE DEFENSE

To the extent warranties apply to the product complained of or were found to have been made by HOME DEPOT, HOME DEPOT breached no warranties.

### AS AND FOR A TWENTY-SECOND SEPARATE DEFENSE

To the extent warranties apply to the product complained of or were found to have been made by HOME DEPOT, the incident and all injuries and damages occurred after all applicable warranties expired.

### AS AND FOR A TWENTY-THIRD SEPARATE DEFENSE

To the extent warranties apply to the product complained of or were found to have been made by HOME DEPOT, any liability for the injuries and damages sought by Plaintiffs are disclaimed by warranties accompanying the product at the time of sale.

### AS AND FOR A TWENTY-FOURTH SEPARATE DEFENSE

Liability against HOME DEPOT is precluded because the product complained of complied with design specifications, formulae and performance standards of the manufacturer and otherwise identical units manufactured to the same design and/or manufacturing specifications, formulae and/or performance standards.

### AS AND FOR A TWENTY-FIFTH SEPARATE DEFENSE

Liability against HOME DEPOT is precluded because the product complained of was not designed, manufactured or sold in a defective manner.

### AS AND FOR A TWENTY-SIXTH SEPARATE DEFENSE

Liability against HOME DEPOT is precluded because the product complained of contained adequate warnings and instructions.

### AS AND FOR A TWENTY-SEVENTH SEPARATE DEFENSE

Although HOME DEPOT denies that the product complained of was unsafe or dangerous in any way, to the extent the product complained of is determined to be so, liability is precluded against HOME DEPOT because Plaintiffs voluntarily and unreasonably proceeded to encounter a known danger.

### AS AND FOR A TWENTY-EIGHTH SEPARATE DEFENSE

The product complained of was substantially altered, modified, and/or changed by Plaintiffs or some other person after its manufacture and sale.

### AS AND FOR A TWENTY-NINE SEPARATE DEFENSE

Plaintiffs lack standing to assert the causes of action herein which therefore should be dismissed.

### AS AND FOR A THIRTIETH SEPARATE DEFENSE

Plaintiffs have failed to name one or more indispensable parties.

### AS AND FOR A THIRTY-FIRST SEPARATE DEFENSE

The product at issue is not the subject of a recall.

### AS AND FOR A THIRTY-SECOND SEPARATE DEFENSE

HOME DEPOT presently has insufficient knowledge or information on which to form a belief as to whether it may have additional as yet unstated defenses available. HOME DEPOT reserves the right to assert additional defenses in the event discovery indicates they would be appropriate.

### AS AND FOR A THIRTY-THIRD SEPARATE DEFENSE

Plaintiff is barred from claiming or recovering any relief set forth in the Amended Complaint by the doctrines of laches, waiver, estoppel or documentary evidence.


**WHEREFORE**, Defendant HOME DEPOT U.S.A., INC., respectfully requests that the Complaint be dismissed in its entirety with costs and disbursements; and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
      March 15, 2019

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
     David M. Pollack
     Michael N. Giacopelli
     *Attorneys for Defendant*
     *HOME DEPOT U.S.A., INC.*
     *i/s/h/a "HOME DEPOT, INC."*
     77 Water Street – Suite 2100
     New York, New York 10005
     212.232.1300

TO :

Arnold C. Lakind, Esq.
Szaferman, Lakind, Blumstein & Blader, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
609-275-0400 (T)
609-275-4511 (F)

-and-

Harold J. Gerr, Esq.
The Law offices of Harold J. Gerr
47 Raritan Avenue, 2nd Floor
Highland Park, New Jersey 08904
732-249-4600 (T)
732-249-0643 (F)